Elwood SWANK and Rita Swank

v.

The UNITED STATES.

BLACK HAWK COAL CORPORATION, INC.

v.

The UNITED STATES.

BULL RUN MINING CO., INC.

v.

The UNITED STATES.

Nos. 403–75, 49–77 and 400–77.

United States Court of Claims.

July 18, 1979.

---

6. *Supra* note 1.

Lloyd R. Persun, Harrisburg, Pa., atty. of record, for plaintiffs in No. 403–75; Howell C. Mette and Shearer, Mette & Woodside, Harrisburg, Pa., of counsel.

James L. Malone, III, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant in No. 403–75; Theodore D. Peyser, Jr., and Robert S. Watkins, Washington, D. C., of counsel.

LeRoy H. Katz, Washington, D. C., atty. of record, for plaintiff in No. 49–77; Katz, Kantor, Katz, Perkins & Cameron, and Richard L. Hirshberg, Washington, D. C., of counsel.

James L. Malone, III, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant in No. 49–77; Theodore D. Peyser, Jr., Rob-ert S. Watkins and Judith H. Johnson, Washington, D. C., of counsel.

Woodrow A. Potesta, Fairmont, W. Va., atty. of record, for plaintiff in No. 400–77.

James L. Malone, III, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant in No. 400–77; Theodore D. Peyser, Jr., Robert S. Watkins and Jo-Ann Horn, Washington, D. C., of counsel.

Before DAVIS, KASHIWA ·and BENNETT, JJ.

PER CURIAM.

These three tax refund suits, consolidated for argument, all present the single question of whether a provision in a coal-mining lease permitting termination by either party (or by the lessor alone) on 30 days' notice precludes the plaintiff-lessees from having an "economic interest" in the coal in place which would entitle them to a percentage allowance for depletion under sections 611 and 613 of the Internal Revenue Code of 1954. The Government admits that, in the absence of this 30-day termination provision, the lessees would all be entitled to such a depletion allowance.[1]

Though they all involve the single issue we have stated, the cases come before the court in different ways and concern different tax years. No. 403–75, involving 1966 and 1967, was tried before Trial Judge Bernhardt who has rendered his decision that plaintiffs are entitled to recover. No. 49–77, involving 1970–1972, is before us on a stipulation of facts. No. 400–77, involving fiscal 1974, comes to us on cross-motions for summary judgment. It is unnecessary to set forth here the individual facts because for present purposes the cases are legally all the same.[2]

---

1. In No. 403–75, there was a slight suggestion by the defendant in its briefs that in any event the particular terms of those leases precluded those plaintiffs from having a sufficient "economic interest" (apart from the termination clause), but, on inquiry, this contention was not pressed at the oral argument—and in any case we reject it.

2. In No. 403–75 the court adopts the trial judge's findings of fact though they are not printed herewith. In No. 49–77 we adopt the parties' stipulation of facts as the court's findings of fact. In No. 400–77 the relevant facts are not in dispute and this opinion reflects such facts as are necessary to sustain our disposition of the cross-motions for summary judgment.

Each taxpayer held a lease (or leases) of coal-bearing property with unstated duration or duration for a term of years—subject to the termination clause or clauses. These leases provided for royalties (plus, in at least one of the cases, a flat annual rent) to be paid by the lessee[3] and gave him the right to extract coal and to sell it to whomever and at whatever price he chose.[4] Each lease contained a clause permitting either party (or the lessor alone) to terminate the lease (and operations thereunder), apparently without cause, within thirty days. In each case the plaintiffs mined coal under these leases during the taxable years and for a substantial time before. The proceeds from the sales of the coal represented the sole source of revenue from which the lessees could recover any rents and royalties paid to the lessor for the right to mine.

■ On these facts, as defendant recognizes (and as Trial Judge Bernhardt held in No. 403–75), the cases are each governed by our decision in *Bakertown Coal Co. v. United States*, 485 F.2d 633, 202 Ct.Cl. 842 (1973), which presented the identical issue on facts practically the same as those now before us. This panel cannot, under this court's practice, depart from that holding. *See Dravo Corp. v. United States*, 594 F.2d 842, 843, 219 Ct.Cl. ——, —— (1979). Nor have we been persuaded that *Bakertown* was wrongly decided or that we should ask the court *en banc* to reconsider the issue.[5]

The Government picks at this or that aspect of the *Bakertown* opinion, but the core holding of that case remains—that coal-mining lessees with leases like those in *Bakertown* (and in these cases) have an "economic interest" in the coal, entitling them to percentage depletion for the coal mined during the taxable years, even though those leases could theoretically and legally have been terminated by the lessor, without cause, on 30 days' notice; the mere existence of the unused termination clause is not enough to deprive the taxpayer-lessees of their "economic interest" they would otherwise admittedly have. Except for *Whitmer v. Commissioner*, 443 F.2d 170 (3rd Cir. 1971)—with which the *Bakertown* court expressly disagreed—we know of no Supreme Court or Court of Appeals holding in conflict with this ruling of *Bakertown.*

Defendant says that *Bakertown* overstressed the difference between the true coal-lessees and coal contract-miners, and that the name or legal form of the mining arrangement is immaterial in determining "economic interest." We are told that what is important in appraising whether the taxpayer has acquired by investment such an interest in the coal in place is whether that taxpayer has, and can have, an adequate expectation at the beginning of the arrangement (or perhaps of the taxable year) that he will be permitted to mine to exhaustion or at least to mine a substantial amount of the coal,[6] and therefore will be able to appraise both his interest in the coal in place and what portion of that interest he has extracted during the taxable period. This need for advance calculation follows, defendant says, from the historical fact that percentage depletion was introduced as a substitute method of calculation for discovery depletion; on the Government's premise, in all the methods of depletion the taxpayer, to be entitled to the deduction, has to be able to estimate in advance his full interest in the minerals in place so that he can determine (at least roughly) what part he has actually taken out of the

---

3. The rents and royalties were not tied to the prices received by the lessees from the coal.

4. In No. 400–77, the lessor had the right of first purchase but only if it met plaintiff-lessee's price. The lessee could always sell to another at a price higher than the lessor was willing to pay.

5. It has some significance to us that, since *Bakertown*, the Treasury Department has not modified the relevant regulation (which continues to speak only in very general terms) so as to exclude from the depletion deduction terminable leases like those involved here.

6. G.C.M. 26290, 1950–1 Cum.Bull. 42, considers this expectation to be solid enough where the contract cannot be terminated without cause within less than one year.

ground during the particular period. With the 30-day cancellation clause, the argument goes, the coal miner or lessee cannot make such an advance estimate because he has and can have no such expectation beyond a month's time.

Even were we to accept defendant's premise that leases are no different for our purposes from mere contract mining arrangements, we could not deny depletion to the present taxpayers. For the records in these cases (as in *Bakertown*) show that each of the taxpayers had regularly mined coal from the leases in question for a very substantial period prior to the taxable years [7] and that, in all reality, they had a very good expectation of being able to continue to do so. In Nos. 403–75 and 400–77, we accept the showing that the lessors rarely (if ever) terminated without cause, not as demonstrating that the lessors lacked the legal power to terminate without cause,[8] but solely as showing that in practice and in reality the plaintiff coal-lessees had, at all relevant times, a solid expectation that they could continue under their leases to mine the coal for a substantial period and to extract a substantial amount of the coal.[9] This means—unless we are to depart from defendant's own norm for testing "economic interest" by substance and reality, rather than by mere nomenclature or the theoretical form of the legal arrangement—that taxpayers are entitled to depletion. They satisfy the proffered criterion of knowing in advance that they will be able to mine for a substantial period and to extract a substantial portion of the coal. Certainly this was true at the beginning of each of the taxable years.

If, however, we must look (contrary to the theme of the Government's presentation) only to the theoretical and legal right of the lessor to cancel within 30 days as if there was such a real possibility every month,[10] we cannot say a *priori* that a month's period is too short for a miner to expect to extract a substantial amount of coal. There is no such proof before us and we do not believe it is a matter of judicial notice. Like *Bakertown*, these cases do not involve leases terminable within a single day.

Finally, we reiterate what was said in *Bakertown*, 485 F.2d at 642, 202 Ct.Cl. at 857, about the non-availability in these cases of the depletion allowance to the lessors or anyone else. If plaintiffs are not entitled, there will be no depletion on the coal mined under these leases. The Government insists that every applicant for the allowance must show his own entitlement. We agree, but think that Congress, in establishing percentage depletion, intended that, except for extraordinary instances, someone should be entitled to depletion on all mined coal covered by the Code provision. *Cf.* I.R.C. § 613(c). Where there can be no other claimant, we believe that neither the Internal Revenue Service nor the courts should be too technical or too harsh in finding the only possible applicant to be ineligible. The considerations are in some (though of course not all) respects different from the cases in which a choice has to be made among competing claimants.

7. In each instance more than the one-year period cited as sufficient in G.C.M. 26290, *supra*, note 6.

8. In No. 403–75 plaintiffs' claim to the judges that the leases could only be terminated for cause is precluded by the trial judge's findings that no such assurance was ever given, and that the reasonable interpretation of the termination clause permitted termination without cause. Plaintiffs failed to except to those findings.

9. We were told at oral argument by counsel for one of the plaintiffs that lessors have not terminated, even though the value of coal has increased markedly in the recent past and the royalties fixed in the leases now seem "outdated," because, for a new lessee, the costs of continuing with an existing mine are usually so great, comparatively, that it is difficult for a lessor to obtain new lessees at terms more favorable to the lessors than the existing leases. We do not accept this as evidence, but the record contains nothing to contradict this explanation for what seems to be the fact that leases of this type have not been regularly cancelled by lessors in recent years.

10. And if, contrary to *Bakertown*, that termination right were all-important and all-determinative even in the case of a true lease.

*Conclusion*

For these reasons, we conclude as follows:

(a) In No. 403–75, we adopt the trial judge's opinion (and set it forth *infra*) and his findings, and on that basis, as well as on the foregoing *per curiam* opinion, we hold that plaintiffs are entitled to recover taxes and interest assessed, plus interest as provided by law.

(b) In No. 49–77, on the basis of the stipulated facts and the foregoing *per curiam* opinion, we hold that plaintiff is entitled to recover taxes and interest assessed, plus interest as provided by law.

(c) In No. 400–77, we grant plaintiff's motion for summary judgment and deny defendant's cross-motion for summary judgment, and hold that plaintiff is entitled to recover interest and taxes assessed, plus interest as provided by law.

(d) In each case, the amount of recovery will be determined pursuant to Rule 131(c).

## OPINION OF TRIAL JUDGE IN NO. 403–75

BERNHARDT, Trial Judge:

In *Bakertown Coal Co. v. United States*, 485 F.2d 633, 202 Ct.Cl. 842 (1973), the court held, contrary to the sense of *Whitmer v. Commissioner*, 28 T.C.M. (CCH) 1480 (1969), aff'd, 443 F.2d 170 (3d Cir. 1971), that a lessee of coal-bearing property whose lease provided a bilateral 30-day termination notice and a tonnage royalty for rent, and allowed a vesting of ownership by the lessee in the coal as mined with the right to extract and sell it to whomever and at whatever price he chose, acquired an economic interest in the coal in place sufficient to earn a depletion deduction under Section 611(a) of the Internal Revenue Code of 1954, *as amended*. Despite the virtual identity of the facts in the present case with those in *Whitmer*, which held against the taxpayer, there is such comparability in significant legal principle to this court's opinion in *Bakertown* that a judgment for the

plaintiff taxpayer[1] is required. Conflict between *Bakertown* and *Whitmer* is basic. The Tax Court has been consistent. See *Mullins v. Commissioner*, 48 T.C. 571 (1967), and *Winters Coal Co. v. Commissioner*, 57 T.C. 249 (1971). More recently *Bakertown* was followed in *Thornberry Constr. Co. v. United States*, 576 F.2d 346, 217 Ct.Cl. —— (1978), so this court has also been consistent in its difference.

During 1966 and part of 1967 the plaintiff, an independent coal mine operator, leased from Northumberland County, Pennsylvania, and mined coal from, two properties of which, *inter alia*, the county had acquired title at sales for delinquent taxes. The leases, which were on a standard form in use by the county for a number of years, and were for an unstated duration until termination, provided for the payment of 35¢ per ton royalties, for termination by the county on specified grounds, and for termination by the county without cause on 30 days written notice. Both plaintiff and a representative of the county testified, over defendant's objection, that the county had never—and would not—terminate a coal lease without cause. One of the properties had been leased previously by the county to one Gusick, to whom plaintiff paid $12,085 for equipment and an existing excavation, and the other was a strip mining operation on land which had not been previously worked. Plaintiff paid $6,500 to construct an access road to the strip mine. A third property had also been leased by plaintiff from the county for deep mining, also succeeding a prior lessee to whom plaintiff had paid money for equipment and an excavation, but plaintiff never extracted any coal pursuant to the deep mining lease because he did not have the miners to operate the mine, so the lease was terminated for this failure in November 1969. Plaintiff had paid $118,477.27 for the acquisition and improvement of a tipple[2] from 1959 to 1966. In 1962 or 1963 he had paid $10,000 for a railroad siding near the breaker. He had

---

1. The term "plaintiff" shall refer to both husband and wife as an entity.

2. A device for breaking, cleaning, and sorting coal, located within convenient distance from the mines.

also purchased $373,123.83 worth of equipment for use in his mining operations, but there is no way of allocating this cost between plaintiff's mining business and a trucking business which he also had, nor of allocating the cost to the two mines in suit as distinguished from its use in the processing of coal purchased from other mines. Plaintiff paid Northumberland County royalties in 1966 and 1967 for production of coal from the two leased mines which he operated, and sold the excavated coal to buyers of his choice and at prices he fixed. He claimed deductions in his 1966 and 1967 income tax returns for depletion of his economic interest in the coal in place under his two leases. Upon disallowance of the deductions by IRS plaintiff paid tax deficiencies of $30,586.84 under protest, together with interest of $3,663, which he now seeks to recover.

Section 611(a) of the Code authorizes "a reasonable allowance for depletion" of mineral deposits under regulations prescribed by the Secretary. Treas.Reg. § 1.611–1(b) (1970) limits the depletion deduction to the owner of an economic interest in the mineral in place acquired by capital investment, and distinguishes a depletable economic interest from a mere economic or pecuniary advantage such as a contract right to purchase the mineral product from the owner of an economic interest, or the right to compensation for services in extracting minerals.

The defendant labors the false issue of parol evidence admitted at trial over objection to show that for over a decade it was the unbroken practice of Northumberland County to terminate its coal leases only for cause, the clear term of the standard lease form to the contrary notwithstanding. Under the identical lease form in *Whitmer, supra,* the Tax Court—seemingly without demur from defendant—received much the same parol evidence that was offered and received here, and nevertheless held that the express provision of the lease as to short termination notice precluded an economic interest by the lessee in the coal in place. On appeal the Circuit Court held the parol evidence inadmissible. 443 F.2d at 173. *Bakertown* which involved no such parol evidence, held that the lessee's property interest "is not varied or diminished simply because the authority is subject to the possibility of extinction in the future by a termination of the leases on short notice." *Bakertown, supra,* 485 F.2d at 636, 202 Ct.Cl. at 847–48.

While, because of *Bakertown,* the immediate case does not require consideration of the parol evidence that was received, it should be observed in passing that the rule that parol evidence cannot be admitted to vary, explain, or contradict a writing is available primarily to the parties to the writing and not to a stranger, such as the government in this instance. 30 Am.Jur.2d §§ 1029–31; 3 A. Corbin on Contracts, § 596 (1960 ed.); *Mustard v. United States,* 155 F.Supp. 325, 332, 140 Ct.Cl. 205, 216 (1957); *Smith v. Commissioner,* 324 F.2d 725, 726 (9th Cir. 1963); *Thorsness v. United States,* 260 F.2d 341, 345 (7th Cir. 1958).

Since the nature of "economic interest" was expounded in *Palmer v. Bender,* 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489 (1933), it has become commonplace in tax opinions. *Filtrol Corp. v. United States,* 487 F.2d 536, 538, 203 Ct.Cl. 32, 35 (1973). *Palmer* limits the right to depletion to the taxpayer who "has acquired, by investment, any interest in the oil in place", and who "secures, by any form of legal relationship, income derived from the extraction of the oil, to which he must look for a return of his capital." *Id.,* 287 U.S. at 557, 53 S.Ct. at 226. The economic interest of the lessee exists independent of the lessor's legal title to the oil [or other mineral] in place. *Lynch v. Alworth-Stephens Co.,* 267 U.S. 364, 45 S.Ct. 274, 69 L.Ed. 660 (1925); *National Steel Corp. v. United States,* 364 F.2d 375, 382–83, 176 Ct.Cl. 952, 966 (1966). The taxpayer's investment in depreciable equipment is not a factor in the concept of a depletable economic interest in the coal. *Parsons v. Smith,* 359 U.S. 215, 79 S.Ct. 656, 3 L.Ed.2d 747 (1959). The lessee's right under his lease to convert the lessor's legal title to minerals in place to his own possession by their severance constitutes a very

real economic interest in the mineral in place which depletes as the minerals are extracted. To exemplify by contrast, a lessee who, as a mining contractor rather than a mine operator, contracts for compensation to extract minerals for the lessor, acquires no economic interest in the minerals in place, and hence cannot claim a depletion deduction. *Parsons v. Smith, supra; Paragon Jewel Coal Co. v. Commissioner*, 380 U.S. 624, 85 S.Ct. 1207, 14 L.Ed.2d 116 (1965); *United States v. Stallard*, 273 F.2d 847 (4th Cir. 1959); *McCall v. Commissioner*, 312 F.2d 699 (4th Cir. 1963); *United States v. Wade*, 381 F.2d 345 (5th Cir. 1967).

The dissent in *Bakertown, supra*, 485 F.2d at 643, 202 Ct.Cl. at 859, suggests that plaintiff could not have had an economic interest if the lessor could terminate at will whenever the market price of coal increased. *Bakertown* involved a private lessor, whereas in the instant case the lessor is Northumberland County, a governmental entity which, unlike a private owner, was interested more in insuring that its coal lands were being actively mined than in the amount of income obtained. As proof of this interest the county never changed the royalty fee in its leases from 1956 through May 31, 1969. Plaintiff knew this.

In *Thornberry Constr. Co. v. United States, supra,* the coal mining lease required the lessee to first offer the mined coal to a third party on pain of termination, but left the price to be set by the lessee and permitted it to sell to others after the third party's requirements were met. Independent of the fact that termination was only for cause, this court held that the lessee had a depletable economic interest because, as in *Palmer, supra,* it looked solely to the income derived from the extraction of coal for a return of its capital.

Defendant's denial of a depletion allowance was erroneous. Plaintiff is entitled to recover taxes and interest assessed because of the erroneous denial, plus interest as provided by law. The amount of plaintiff's recovery should be determined pursuant to Rule 131(c)(2).