**Donald J. COOKE, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 581–82C.**

United States Claims Court.

March 3, 1983.

---

Brice M. Clagett, Washington, D.C., with whom were Christopher Curtis, Harold Hongju Koh and Bruce N. Kuhlik, Washington, D.C., of counsel, for plaintiffs.

Stephen G. Anderson, Washington, D.C., with whom were Asst. Atty. Gen. J. Paul McGrath and John B. Reynolds III, Washington, D.C., of counsel, for defendant.

John P. Coale, Washington, D.C., for plaintiffs in Amburn-Lijek, amici.

James H. Davis, Los Angeles, Cal., for appellants in McKeel v. Islamic Republic of Iran, amici.

## ORDER

KOZINSKI, Chief Judge.

This suit was brought by several of the American citizens taken hostage in Tehran, Iran, on November 4, 1979, and released on January 20, 1981, and by persons who were their spouses, parents and children during that period. Plaintiffs have moved that the court certify the case as a class action pursuant to RUSCC 23 and designate them as class representatives. Defendant filed an opposition on December 10, 1982.

On December 14, 1982, the court sua sponte notified John Coale, counsel for plaintiffs in *Amburn-Lijek v. United States,* No. 564–82C (USCC filed Nov. 4, 1982), granting him leave to file an amicus brief or participate in oral argument on the motion. Mr. Coale appeared at the December 23, 1982, hearing and represented that he did not oppose certification, largely because the proposed class would not include his clients. However, Mr. Coale also stated that other attorneys representing former hostages and their families wished to address the motion. The court allowed until January 3, 1983, for submission of amicus briefs.

One amicus brief was filed by counsel for certain appellants in *McKeel v. Islamic Republic of Iran,* Nos. 82–5111, 82–5114, 82–5115, 82–5116, 82–5117, 82–5417 (9th Cir. filed 1982). These persons would be within the proposed class. The brief neither supported nor opposed certification but merely alerted the court to various procedural ramifications.

On January 5, 1983, plaintiffs moved to suspend proceedings because the D.C. Circuit had granted rehearing in *Persinger v. Islamic Republic of Iran,* 690 F.2d 1010 (D.C.Cir.1982). Because both parties agreed that resolution of the *Persinger* motion could materially affect the course of this litigation, the court granted the stay.[1] However, it was agreed that the court would rule on the motion for class certification.

### FACTS

Plaintiffs are suing for damages suffered due to the imprisonment of American citizens by Iran. They claim that the former hostages, their parents, spouses and children, each had a valid cause of action against Iran and that this cause of action constituted a valuable property right. They further claim that the United States deprived them of this property when President Carter signed the so-called Algiers Accords, Jan. 19, 1981, United States-Algeria-Iran, *reprinted in* 20 Int'l Legal Materials 224 (1981), precluding plaintiffs from suing for damages suffered as a result of the hostage seizures.[2]

The essence of plaintiffs' claims, therefore, is that the President's action constituted a taking of their property for which they are entitled to just compensation under the fifth amendment. Should plaintiffs prevail on this theory, they would be entitled to establish what they could have recovered against Iran and obtain the same amount from the United States. The United States, in turn, could raise any defenses to which Iran would have been entitled.

### DISCUSSION

#### A. *Preliminary Considerations*

Plaintiffs argue that certification of the proposed class would expedite the litigation and provide a superior way to adjudicate these claims. Defendant argues that there is no possibility of inconsistent adjudications, that common issues are few and separate issues are many, and that certification of the class would do little or nothing to facilitate resolution of the dispute.

Much of the authority on which the parties rely consists of cases interpreting FRCP 23, which is similar to RUSCC 23. However, there are at least three practical differences between our class action rule and the rule in the district courts: (1) under our rule, class members are not bound by adjudication of the class action unless they specifically opt into the case;[3] (2) there is generally little or no possibility of inconsistent adjudications of the same issue since the jurisdiction of this court is usually exclusive;[4] and (3) because the defendant in

---

1. The court also stayed proceedings in *Amburn-Lijek,* No. 564–82C. Order of January 6, 1983.

2. The President's authority to abrogate plaintiffs' rights to sue Iran was upheld in *Persinger,* 690 F.2d at 1022–23. The rehearing in that case may determine whether plaintiffs could have successfully sued Iran absent the Algiers Accords.

3. The fact that our rule provides for an opt-in class deprives both plaintiffs and defendant of many of the benefits normally associated with class action certification. Because the opt-in procedure requires an affirmative act from every potential plaintiff to join the class, the de-

vice amounts to little more than a permissive joinder rule and is therefore of limited assistance to the proposed class representatives. At the same time, defendant is deprived of the normal benefit of class adjudication, namely the ability to bind unidentified parties if the case should be resolved in its favor.

4. There are two exceptions. First, the court shares jurisdiction over Tucker Act claims under $10,000 with the district courts. 28 U.S.C. §§ 1346(a)(2), 1491(a)(1), as amended by the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, §§ 129, 133(a), 96 Stat. 37. However, the FCIA assures consistency by directing all appeals of Tucker Act cases to the Court of Appeals for the Federal Circuit. FCIA

our cases is always the same—the United States—it may be bound by adverse determinations even vis-a-vis individuals who are not parties to the litigation. *See, e.g., Monterey Life Systems, Inc. v. United States,* 225 Ct.Cl. 50, 60–61, 635 F.2d 821, 826–27 (1980); *Swank v. United States,* 221 Ct.Cl. 246, 249 (1979).

These differences suggest that the following policies should govern our discretion in granting class certification:

■ (1) Certification should be granted most liberally in cases that fall within our areas of concurrent jurisdiction and thereby are subject to the risks of inconsistent adjudications. Cases subject to our exclusive jurisdiction should receive more skeptical consideration.

■ (2) A showing of common factual issues should be weighed more heavily than a showing of common legal issues in granting certification. Resolution of factual disputes often involves significant expense. Insofar as factual issues are truly common to large groups of potential plaintiffs, class certification may be useful in avoiding repetitive lawsuits and in spreading the burden of litigation. On the other hand, the Claims Court can resolve common legal issues relatively inexpensively by motion in a single case. In the areas of our exclusive jurisdiction, such resolution will generally be conclusive under principles of stare decisis, subject only to the normal appeals process. Thus, a showing of legal commonality, while significant in FRCP 23 motions, is of relatively little import under RUSCC 23.

■ (3) Certification should be granted most liberally where the amount of the individual recovery is small in relation to the litigation costs. *See Quinault Allotee Ass'n v. United States,* 197 Ct.Cl. 134 (1972). It is not necessary that the litigating costs exceed the likely recovery of each plaintiff.

It is sufficient that the probable cost of litigation would render individual actions unprofitable or create a serious free-rider problem.

■ (4) Because RUSCC 23 calls for an opt-in procedure rather than the opt-out procedure in FRCP 23, class certification puts the court in the position of issuing an invitation to potential litigants to come forward and assert their claims. This is a decidedly uncomfortable position for a court to assume under our system of jurisprudence. The court should therefore be reluctant to certify a class unless it is convinced that to do so would serve the interests of justice.

### B. *Application to this Case*

Like FRCP 23, our rule requires as a condition for class certification that the proposed class meet all the requirements of subsection (a). In addition, the class must meet one of the requirements of subsection (b). Unlike FRCP 23, however, it makes no difference which part of subsection (b) is met since notice to potential class members (and the consequent opt-in procedure) is always the same.

■ The court concludes that class certification is not appropriate in this case because there is considerable doubt as to whether the proposed class satisfies subsection (a)(3) of RUSCC 23. That subsection requires that the claims of the proposed class representatives be typical of those of the class. In determining typicality of claims, it is not appropriate to examine the entire transaction which is the subject of the lawsuit but only those aspects of it which are in dispute. Here, practically all of the facts which are common to potential claimants are a matter of public record and have been conceded by defendant.[5]

---

§ 127(a) (to be codified at 28 U.S.C. §§ 1295(a)(2), (3)).

Second, our jurisdiction to hear tax refund suits is concurrent with that of the district courts. 28 U.S.C. §§ 1346(a)(1), 1491(a)(1), as amended by FCIA §§ 129, 133(a). Appeals from district court tax refund suits are to the

regional circuits, while all of our cases are appealable to the Federal Circuit. FCIA § 127(a). The only significant possibility for inconsistent adjudications, therefore, exists in tax refund cases.

5. The parties agree that certain plaintiffs were taken hostage, confined and later released by

The issues actually in dispute therefore are limited to two categories: (a) certain basic legal issues including whether plaintiffs have a valid fifth amendment claim, whether defendant is entitled to any defenses which Iran could have raised, and what body of law would govern the measure of any liability; and (b) certain factual issues pertaining to the status of various plaintiffs and the nature and extent of their damages, if any. *See* n. 5 *supra.*

█ Because the claims of the potential class members will almost certainly exceed $10,000,[6] this case falls within this court's exclusive jurisdiction. As explained above, under such circumstances, the existence of common legal issues should be given little weight in comparison to factual issues. Here, the legal issues are identical for the class, but they will be resolved quickly and relatively inexpensively by dispositive motion.[7] The factual issues, *i.e.,* the facts remaining in dispute, are likely to be dissimilar since they concern status and damage questions particular to each claimant. The court is therefore not persuaded that the requirement of typicality of claims has been met. In light of the court's earlier determination that our class action rule should be narrowly construed, *see* p. 698 *supra,* it is inappropriate to grant class action certification under these circumstances.

## CONCLUSION

The motion for class action certification is denied.[8]

## IT IS SO ORDERED.

Iran; that defendant signed certain agreements and issued certain orders precluding litigation by United States nationals; and that plaintiffs' suits have been dismissed in all fora but the Claims Court. They disagree on the status of certain plaintiffs as relatives of former hostages; on the nature and scope of each plaintiff's injuries, if any; and on the appropriateness of class certification.

6. While these plaintiffs have not specified the amount of damages sought, the plaintiffs in *Amburn-Lijek* have asked for $10 million each.

7. In light of the potential recoveries, *see* n. 6 *supra,* the court is persuaded that denial of class action certification will not impede potential claimants from bringing suits.

8. Denial of class certification does not, of course, preclude plaintiffs from seeking to bring others into the action through informal channels. Nor should the court's decision be construed as precluding other measures to streamline the litigation, *e.g.,* by designation of a lead counsel or coordination of pending issues.