Ronald F. **BERKLEY,** et al., Plaintiffs,

v.

**UNITED STATES,** Defendant.

No. 98–943C.

United States Court of Federal Claims.

Nov. 5, 1999.

Barry P. Steinberg, Washington, D.C., attorney of record for plaintiffs. William A. Aileo, of counsel.

Lee J. Freedman, Armando O. Bonilla, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., with whom were James M. Kinsella, Assistant Director, David M. Cohen, Director, and David W. Ogden, Acting Assistant Attorney General, attorneys of record for defendant. Major Maura T. McGowen, United States Air Force, of counsel.

**OPINION**

HORN, Judge.

### FACTS

Plaintiffs, Ronald F. Berkley, Michael C. Hall, Forrest Joe Lykins, Jr., Leonard H. Mattingly, Jr., Thomas William Stanley, Mark Stephen Welte, Mark E. LaFlamme, David Paul Wilson, Michael H. Deal, Douglas Clayton Kinneard and James B. Freeman, Jr., brought this action on behalf of them-

selves and approximately 1,595 other similarly situated former commissioned officers of the United States Air Force. The plaintiffs were considered and selected for involuntary separation from the United States Air Force by the Fiscal Year 1993 Reduction–In–Force Board (FY93 RIF Board). Plaintiffs allege that the FY93 RIF Board violated their Fifth Amendment right to equal protection of the law under the United States Constitution Specifically, the plaintiffs claim that, based on a Memorandum of Instruction issued by the Secretary of the Air Force, the FY93 RIF Board unfairly took into account racial and gender characteristics when it considered which Air Force officers would be selected for involuntary separation.

The Air Force established the FY93 RIF Board to screen candidates for involuntary separation. According to the plaintiffs, the Secretary of the Air Force issued a written "Memorandum of Instruction," the purpose of which was to provide guidance to the FY93 RIF Board. The plaintiffs allege that the Secretary directed the FY93 RIF Board to consider the racial, ethnic, and gender classification of each commissioned officer when considering candidates for separation. Plaintiffs maintain that as a result of the Secretary's guidance, evidenced by the Secretary's Memorandum, they were unjustly chosen for early separation. The plaintiffs assert that there is a common legal issue which has equal application to the group of commissioned officers who were involuntarily separated by the FY93 RIF Board. Plaintiffs further contend that all members of the potential class can be readily identified from Air Force records. The plaintiffs maintain that whether the constitutional rights of the 1,595 potential class members were violated and how such violations apply to those commissioned officers are questions of law which predominate over any separate factual issues. Therefore, according to the plaintiffs, the case is suitable for class certification. The plaintiffs move this court to certify as a class all commissioned officers of the United States Air Force who were considered by and selected for involuntary separation from the United States Air Force by the FY93 RIF Board. The plaintiffs rely on *Quinault Allottee Ass'n v. United States*, 197 Ct.Cl.

134, 453 F.2d 1272 (1972), as support for their request to certify a class and argue that the eight criteria identified in that case for determining whether class certification is appropriate have been met.

The defendant claims that the proposed class is insufficient in number because it actually consists of multiple sub-groups, and 130 members of the proposed 1,595 member class are barred from asserting their claims by the statute of limitations. Defendant also argues that class certification is inapplicable because of the difficulty in fashioning an appropriate remedy. The defendant claims that the multiple sub-groups consist of dissimilar groups of men and women, including male members of identifiable minority groups, female members of minority groups, and some of both genders who were awaiting disciplinary or separation proceedings at the time of the FY93 RIF Board's review. The defendant, therefore, argues that the proposed class actually is splintered into numerous separate groups and that the individual segments are not large enough for certification. The defendant also submits that certification is inappropriate because in order to resolve the lawsuit, different case specific, factual findings on employment status and damages will be required regarding each of the 1,595 potential plaintiffs.

## DISCUSSION

Class actions provide courts with the opportunity to promote good litigation management by balancing among a variety of competing interests, including time, efficiency, cost, and the right of individual plaintiffs to file complaints to redress perceived wrongs, preventing a multiplicity of suits based on a common wrong to all. *Green v. Wolf Corp.*, 406 F.2d 291, 300 (2nd Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). The courts also long have recognized the need for an avenue to redress wrongs, which otherwise would be unremediable, because the individual claims involved are too small, or the claimants are too widely dispersed. *Id.* at 297. Consequently, the class action procedure was created to allow a few representatives to sue on behalf of others similarly situated in order to obtain a judg-

ment which would bind all. *Id.; see, e.g. Smith v. Swormstedt,* 57 U.S. 288, 302, 16 How. 288, 14 L.Ed. 942 (1853).

The United States Supreme Court recently discussed the historical use of the class action by noting the following:

> Although representative suits have been recognized in various forms since the earliest days of English law, class actions as we recognize them today developed as an exception to the formal rigidity of the necessary parties rule in equity, as well as from the bill of peace, an equitable device for combining multiple suits. The necessary parties rule in equity mandated that "all persons materially interested, either as plaintiffs or defendants in the subject matter of the bill ought to be made parties to the suit, however numerous they may be." But because that rule would at times unfairly deny recovery to the party before the court, equity developed exceptions, among them one to cover situations "where the parties are very numerous, and the court perceives, that it will be impossible to bring them all before the court; or where the question is of general interest, and a few may sue for the benefit of the whole; or where the parties form a part of a voluntary association for public or private purposes, and may be fairly supposed to represent the rights and interest of the whole...."From these roots, the modern class action practice emerged....

*Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 119 S.Ct. 2295, 2308, 144 L.Ed.2d 715 (1999) (citations omitted).

Rule 23 of the Rules of the United States Court of Federal Claims (RCFC) allows the court broad discretion to determine under what terms and conditions to certify a class.[1] RCFC 23 provides:

> A motion to certify a class action shall be filed with the complaint and comply with Rule 3(c), with service to be made as provided in Rule 4. The court shall determine in each case whether a class action may be maintained and under what terms and conditions.

RCFC 23.

Although RCFC 23 does not offer specific criteria for determining when class certification is appropriate, the defendant argues that the United States Court of Federal Claims and its predecessor courts have "generally disfavored" class action suits, reserving them only for extraordinary cases, citing an opinion issued earlier by this court, *Hannon v. United States,* 31 Fed.Cl. 98, 102 (1994).[2] As suggested by the defendant, a number of decisions of the United States Court of Federal Claims and its predecessor courts have discussed a "disfavored status" of class action suits in this court and relied on differing rationales. *See Taylor v. United States,* 41 Fed.Cl. 440, 445 (1998) (although certifying a class, offers a comprehensive, historical discussion of class action certification); *Moore v. United States,* 41 Fed.Cl. 394, 397 (1998) (although certifying a class, concluding that class actions are appropriate only when they serve the interests of justice); *Banner v.*

---

1. Federal Rule of Civil Procedure Rule 23 contains far more specific directions regarding standards to apply when deciding whether or not to certify a class action.

2. When this court issued its decision in the *Hannon* case and opted to proceed in a test case fashion, it did so based on the specific fact pattern presented by the group of cases which fall under the *Hannon* umbrella. Several obstacles to class certification were present in the *Hannon* case. First, because the United States Department of Justice had not completed administratively processing large numbers of the potential plaintiffs, and analogous litigation was proceeding in other fora, the factual picture remained entangled. Second, as pointed out in the decision, the governing precedent in the United States Court of Appeals for the Federal Circuit dictated a benefit eligibility test requiring exami-

nation of the official position description assigned to the individual and examination of the duties actually performed by the employee. Therefore, the plaintiffs in *Hannon* could not meet the third *Quinault* test, which requires that the predominant legal issue should override any separate factual issues affecting class members. *Hannon v. United States,* 31 Fed.Cl. at 104.

The instant case provides this court with a welcome opportunity to further refine its thinking with regard to class action certification after having had the opportunity to experiment with several test case scenarios and consolidated case patterns. Although this court believes certification should remain a tool reserved for carefully selected cases, the court now also understands the limitations of those other case management devices.

*United States*, 38 Fed.Cl. 700, 703–04 (1997) (noting, "[t]hus, class certification in cases involving takings claims presents significant issues as to whether legal issues can override factual issues."); *Black v. United States*, 24 Cl.Ct. 471, 477 (1991) (finding five *Quinault* grounds for denying class certification); *Abel v. United States*, 18 Cl.Ct. 477, 477–78 (1989) (denying class certification in a water rights case, suggesting that specific, individual questions of fact existed based on area historical uses and varying landscapes of plaintiffs' lands); *Buchan v. United States*, 27 Fed.Cl. 222, 223 (1992) (noting, "[o]ne consideration is that the majority of actions before the Court of Federal Claims involve money judgments[,] ... consolidation of individual actions, under RUSCFC 42, allows individualized damage determinations[,] ..." and expressing concern regarding the opt-in/opt-out procedure); *Armitage v. United States*, 18 Cl.Ct. 310, 312–14 (1989) (citing a string of cases suggesting that the Claims Court "disfavored" and reserved for extraordinary cases class actions and in the case before the court discussing difficulties with payout methodology and identification of class members); *Busby School of the N. Cheyenne Tribe v. United States*, 8 Cl.Ct. 596, 602 (1985) (declining to certify a class because damages assessments for each defendant could vary for individual class members); *Saunooke v. United States*, 8 Cl.Ct. 327, 329–30 (1985) (recognizing that "the reported decisions provide no definitive reasons for the limited regard that the class action has received" in the Court of Claims and Claims Court, but reviewing a number of the relevant considerations, and noting that tax refund cases, by their nature, are especially inappropriate for class action status when only some of the proposed class have paid the assessed deficiency); *O'Hanlon v. United States*, 7 Cl.Ct. 204, 206 (1985) (declining to certify a class and noting, "the case history leading to promulgation of the Rule [23] in this Court makes clear that the device is reserved for extraordinary cases and is generally disfavored").

In *Cooke v. United States*, 1 Cl.Ct. 695, 697 (1983), although rejecting certification, the court offered an in-depth review of the issues, as follows:

[T]here are at least three practical differences between our class action rule and the rule in the district courts: (1) under our rule, class members are not bound by adjudication of the class action unless they specifically opt into the case; (2) there is generally little or no possibility of inconsistent adjudications of the same issue since the jurisdiction of this court is usually exclusive; and (3) because the defendant in our cases is always the same—the United States—it may be bound by adverse determinations even vis-a-vis individuals who are not parties to the litigation. See, e.g., *Monterey Life Systems, Inc. v. United States*, 225 Ct.Cl. 50, 60–61, 635 F.2d 821, 826–27 (1980); *Swank v. United States*, 221 Ct.Cl. 246, 249, 602 F.2d 348 (1979).

\* \* \*

(1) Certification should be granted most liberally in cases that fall within our areas of concurrent jurisdiction and thereby are subject to the risks of inconsistent adjudications. Cases subject to our exclusive jurisdiction should receive more skeptical consideration.

(2) A showing of common factual issues should be weighed more heavily than a showing of common legal issues in granting certification. Resolution of factual disputes often involves significant expense. Insofar as factual issues are truly common to large groups of potential plaintiffs, class certification may be useful in avoiding repetitive lawsuits and in spreading the burden of litigation. On the other hand, the Claims Court can resolve common legal issues relatively inexpensively by motion in a single case. In the areas of our exclusive jurisdiction, such resolution will generally be conclusive under principles of stare decisis, subject only to the normal appeals process. Thus, a showing of legal commonality, while significant in FRCP 23 motions, is of relatively little import under RUSCC 23.

(3) Certification should be granted most liberally where the amount of the individual recovery is small in relation to the litigation costs. See *Quinault Allottee Ass'n v. United States*, 197 Ct.Cl. 134, 453 F.2d

1272 (1972). It is not necessary that the litigating costs exceed the likely recovery of each plaintiff. It is sufficient that the probable cost of litigation would render individual actions unprofitable or create a serious free-rider problem.

(4) Because RUSCC 23 calls for an opt-in procedure rather than the opt-out procedure in FRCP 23, class certification puts the court in the position of issuing an invitation to potential litigants to come forward and assert their claims. This is a decidedly uncomfortable position for a court to assume under our system of jurisprudence. The court should therefore be reluctant to certify a class unless it is convinced that to do so would serve the interests of justice.

*Cooke v. United States*, 1 Cl.Ct. at 697–98 (footnotes omitted).[3]

The decision in *Taylor v. United States* offered a further discussion of this court's apparent historical reluctance to certify class actions. According to the court, prior to the decision in *O'Hanlon v. United States*, 7 Cl.Ct. 204, 206 (Cl.Ct.1985) which described the class action "device" as "generally disfavored," the court's reluctance to certify a class

> may be attributed more to the fact that previous cases were not suited for class action resolution than to a generalized belief that they should not be certified in this court.... Considering the discretionary nature of RCFC 23 and the fact that it calls for a case-by-case determination, there appears to be no basis for stating that class actions are "generally disfavored" and should be used only in "rare and extraordinary cases."

*Taylor v. United States*, 41 Fed.Cl. at 444.

Furthermore, the court wrote:

> A frequently cited rationale for the disfavored status of class actions is related to the unique jurisdiction of this court. In cases where a money judgement is sought against the United States, the court requires individual proof of the amount of

money damages. *See Buchan*, 27 Fed.Cl. at 225. This requirement is based on the belief that only individual plaintiffs can meet the burden of proof for damages when there is a waiver of sovereign immunity, which is always present in this court. *See Abel v. United States*, 18 Cl.Ct. 477, 478 n. 1 (1989); *Saunooke*, 8 Cl.Ct. at 329. While a valid concern, this rationale principally implicates the determination of money damages. In this case, the court can certify the class to determine whether the government is liable to class members for separation pay. Later, if necessary, the court can use a formula to determine damages for individual class members. If the determination of damages becomes too speculative or encumbered by individual factual issues, the court can decertify the class for determination of money damages. *Id.*

The *Taylor* court also addressed the use of opt-in and opt-out classes. *Id.* Recognizing the reluctance of this court's predecessors to bind parties who have not affirmatively joined the litigation by an opt-out class, the court in *Taylor* found that the alternatives to class certification, such as consolidation of cases or using a test case method, would prove to be difficult since similarly situated persons could fail to intervene, and there would be an increased chance of inconsistent and duplicative litigation and a backlog of factually similar cases. *Id.* Emphasizing that class certification was the most fair and efficient way to resolve the dispute for both parties, the court in *Taylor* found that class certification could improve case disposition efficiency and reduce repetitious litigation, and, therefore, allowed the litigation to proceed as a class suit. *Id.* The court pointed out, however, that:

> Notably in *Quinault*, the court refused to adopt a general rule for the certification of class actions or the procedures for a class action once certified. Instead, the court advocated a case-by-case approach with the potential of developing a general rule

---

3. One of the omitted footnotes from *Cooke v. United States* offered the following observation: "Because the opt-in procedure requires an affirmative act from every potential plaintiff to join

the class, the device amounts to little more than a permissive joinder rule and is therefore of limited assistance to the proposed class representatives." 1 Cl.Ct. at 698 n. 3.

in the future. A general rule has yet to materialize and therefore, the court is free to apply its discretion when deciding when and how to certify a class.

*Id.* at 445.

The decision in *Quinault Allottee Ass'n v. United States,* 197 Ct.Cl. 134, 453 F.2d 1272, frequently has been cited as setting an appropriate eight-part test for assessing whether or not to certify. The *Quinault* court adopted much of the practice and procedure of Rule 23 of the Federal Rules of Civil Procedure employed by the district courts, and stated, "[t]here is no reason why this court cannot use the same device, if it is appropriate." *Id.* at 137, 453 F.2d 1272. As noted, the *Quinault* court, however, declined to articulate a general rule of standards, for certifying class actions and suggested proceeding on a case by case basis. *Id.* at 140, 453 F.2d 1272.[4] *See also Crone v. United States,* 210 Ct.Cl. 499, 515, 538 F.2d 875 (1976); *Clincher v. United States,* 205 Ct.Cl. 8, 11, 499 F.2d 1250 (1974), *cert. denied,* 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975); *Buchan v. United States,* 27 Fed.Cl. at 224; *Black v. United States,* 24 Cl.Ct. at 477; *O'Hanlon v. United States,* 7 Cl.Ct. at 206.

■ Using some portions of Rule 23 of the Federal Rules of Civil Procedure, the court in *Quinault* set out eight conjunctive criteria for determining whether certification is appropriate:

(i) the [members] must constitute a large but manageable class, (ii) there is a question of law common to the whole class, (iii) this common legal issue is a predominant one, overriding any separate factual issues affecting the individual members, (iv) the claims of the present plaintiffs are typical of the claims of the class, (v) the government has acted on grounds generally applicable to the whole class, (vi) the claims are so small that it is doubtful that they would be pursued other than through this case, (vii) the current plaintiffs will fairly and adequately protect the interests of the class without a conflict of interest, (viii) the prosecution of individual actions by members of the class, some in district courts and some in this court, would create a risk of consistent or varying adjudications.

*Quinault v. United States,* 197 Ct.Cl. at 140–41, 453 F.2d 1272.[5]

The eight elements of the *Quinault* standard for class certification closely parallel Federal Rule of Civil Procedure 23, as follows: (1) *Quinault* states that the members of the class must constitute a large, but manageable class; Federal Rule of Civil Procedure 23(a)(1) allows certification if the class is so numerous that joinder of all members is impracticable, and Federal Rule of Civil Procedure 23(b)(3)(D) takes into account manageability in allowing class certification; (2) *Quinault* requires that there must be a question of law common to the whole class; Federal Rule of Civil Procedure 23(a)(2) requires questions of law or fact common to the class; (3) *Quinault* directs that there must be a common legal issue that overrides separate factual issues affecting individual members; Federal Rule of Civil Procedure 23(b)(3) has a consistent requirement that the question of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class

---

4. In 1972, when the *Quinault* decision was issued, and when court dockets were significantly less congested than in today's environment, the court articulated its reluctance to adopt a general rule as follows: "until we are clearer as to the shape of the class-suit needs in this court and the functioning of various class-suit devices." *Quinault,* 197 Ct.Cl. at 140, 453 F.2d 1272.

5. As is evident from the discussion above, the *Quinault* guidelines regarding whether to exercise discretion to certify a class continue to be addressed, restated and refined since the *Quinault* decision. For example, in *Cooke v. United States,* the court suggested the following: "Certification should be granted most liberally in cases

that fall within our areas of concurrent jurisdiction and thereby are subject to the risks of inconsistent adjudications ...; a showing of common factual issues should be weighed more heavily than a showing of common legal issues in granting certification ...; certification should be granted most liberally where the amount of the individual recovery is small in relation to litigation costs ..." and that "the probable cost of litigation would render individual actions unprofitable or create a serious free-rider problem." *Cooke v. United States,* 1 Cl.Ct. at 698 (citing *Quinault Allottee Ass'n v. United States,* 197 Ct.Cl. at 134, 453 F.2d 1272).

action is superior to other available methods for fair and efficient adjudication; (4) *Quinault* offers that the claims of the party plaintiffs should be typical of the claims of the class; Federal Rule of Civil Procedure 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class; (5) *Quinault* directs that the government must have acted on grounds generally applicable to the whole class; another of the alternatives identified in Federal Rule of Civil Procedure 23(b) states that one of the possible elements of a maintainable class action is that the opposing party to the class has acted or refused to act on grounds generally applicable to the group (Rule 23(b)(2); (6) *Quinault* offers that the court should review whether the claims of the many claimants are so small that it is doubtful they otherwise would be pursued; similarly, the underlying theme of Federal Rule of Civil Procedure 23, as discussed in the Advisory Committee Notes of 1966, suggests that "the amounts at stake for individuals may be so small that separate suits would be impracticable," *see* Federal Rule of Civil Procedure advisory Committee Notes discussing subsection (b)(3) of Rule 23); *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 616, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); (7) *Quinault* directs that the party plaintiffs must adequately and fairly protect the interests of the class without a conflict of interest; the same requirement is covered in Federal Rule of Civil Procedure 23(a)(4); (8) *Quinault* requires consideration of whether the prosecution of individual lawsuits could create a risk of inconsistent or varying adjudications; Federal Rule of Civil Procedure 23(b)(1)(A) addresses the same concern.

Thus, according to the *Quinault* court, the elements articulated in Federal Rule of Civil Procedure 23, created, in combination, "good lessons" for determining when to proceed as a class action, *Quinault*, 197 Ct.Cl. at 141, 453 F.2d 1272, and the elements are parallel except in one respect. For class certification, Federal Rule of Civil Procedure 23 requires four prerequisites and one of three other factors, including some of the alternative requirement grounds for certification. In comparison, the *Quinault* articulation suggests that all eight elements articulated by

the court should be reviewed to determine whether class certification is appropriate.

■ The plaintiffs are correct that the first *Quinault* factor, which requires a large, but manageable class, has been satisfied in the instant case. The plaintiffs allege that there would be approximately 1,595 possible plaintiffs in the proposed class. This is a sufficiently large number of prospective litigants even if certain potential members are found to be ineligible because of an expired statute of limitations. Each case raises the identical legal questions, and originates from the same factual background, the impact of the Memorandum of Instruction issued by the Secretary. The potential class, although not small, is manageable, in part because the defendant should be able to identify the class members by using military personnel records.

In *Taylor v. United States*, 213 Army and Air Force employees were found to satisfy the requirement for a sufficiently large, but manageable class when the court used a discretionary, case-by-case approach to approve the numerosity requirements for the class certification. *See Taylor v. United States*, 41 Fed.Cl. at 445. The court considered whether the members of the class were "readily identifiable, easily reachable, and whether there [were] factual distinctions that would interfere with resolution of the issues and thus undermine the manageability of the class." *Id.* The court found that, despite the possibility that the potential plaintiffs were located around the globe, they were linked through the Army and Air Force, and based on this connection were easily reachable. *Id.* Similar to the case at bar, there appeared to be few factual differences between the liability issues raised by the potential class members in *Taylor v. United States. Id.; see also Moore v. United States*, 41 Fed.Cl. at 397–99; *Armitage v. United States*, 18 Cl.Ct. at 313 (finding numerosity satisfied by 100,-000 class members, yet denying certification based in part on unidentifiable class members).

■ The second and third elements of the *Quinault* test require that the plaintiffs' legal claim for recovery must be common to all of

the commissioned officers who met the FY93 RIF Board, and that the separate factual issues must not override the common legal question. In the instant case, the plaintiff and defendant agree that the legal and common questions raised by the plaintiffs' complaint is whether the FY93 RIF Board denied the plaintiff equal protection of the law under the Fifth Amendment, and, if so, whether such a finding should be applied to each plaintiff in a *per se* fashion. The issue of whether there is a question of law common to the whole class is satisfied "when there is one core legal question that is likely to have one common defense." *Taylor v. United States,* 41 Fed.Cl. at 446 (citing *Moore v. United States,* 41 Fed.Cl. at 397–98). In *Taylor v. United States,* the court held that the common question of law should be addressed first and is separate from any factual differences involving damages determination. *Id.* at 446.

■ The defendant asserts that there are individual factual issues which distinguish members of the proposed class and which make this case inappropriate for class certification. The defendant argues that whether a specific officer should have been retained on active duty should be based on his or her individual record of performance. Moreover, the defendant suggests that over 400 members of the proposed class are women, members of identifiable minority groups, or both, which would raise issues substantially different from those of male and non-minority class members, and that some members of the proposed class were already awaiting court-martial or separation for cause at the time of the FY93 RIF Board. These alleged differences, however, should not bar certification in the instant case once the court makes a determination on the common legal issues. If the plaintiff were to prevail on the facial challenge to the Secretary's Memorandum of Instruction, and if the defendant were to prevail on the inappropriateness of *per se* application of a finding adverse to the defendant on individual plaintiffs, the court could choose to remand the questions relevant to retention on active duty, correction of military records, and back pay, to the Secretary of the Air Force for action consistent with the court's decision, *see Orloff v. Wil-*

*loughby,* 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953), or develop another mechanism to resolve certain cases and reach individual damage determinations for those whose military records are uncontested, *see Taylor v. United States,* 41 Fed.Cl. at 446. Because the facial challenge to the Secretary's Memorandum of Instruction and its application must be decided first, the second and third requirements of the *Quinault* test are satisfied in the instant case.

■ Next, in order to meet the fourth *Quinault* test, the plaintiffs contend that their constitutional claims are uniform and typical of the proposed class by the very nature of their claim that the Secretary's Memorandum of Instruction issued to the FY93 RIF Board violated the constitutionally protected right of equal protection under the law for all of the commissioned officers who were involuntarily separated. The defendant responds by suggesting that if the class is certified, the individual members of the proposed class will be denied the opportunity to bring other separate claims beyond the constitutional allegations included in plaintiff's complaint. The defendant further argues that dissimilar remedies, which it believes apply to each of the class members, prevent the potential class from having the required typicality of claims directed by the forth element of the *Quinault* model.

In the past, the typicality requirement in the *Quinault* test has not been found to be unusually restrictive. For example, in *Armitage v. United States,* 18 Cl.Ct. at 313, the court, although ultimately denying the request for class certification, was satisfied that the typicality requirement was met, even though the named plaintiffs, law enforcement officers, wanted to represent a class of potentially 100,000 diverse federal employees. A constitutional challenge to federal taking of private land likewise fulfilled the typicality prerequisite based on a sample of deeds furnished. *Moore v. United States,* 41 Fed.Cl. at 399. In *Taylor v. United States,* five plaintiffs who claimed they were denied separation pay were found to be sufficiently typical to represent "all future, present, and former Army and Air Force Exchange Ser-

vice (AAFES), non-mobile employees and all future, present, and former AAFES, mobile employees who did not make a Permanent Change of Station ... and who are, were, or will be employees as defined by 5 U.S.C. § 5597(a)(3)." 41 Fed.Cl. at 443. In the case at bar, the court believes that the named plaintiffs, who claim a denial of equal protection under the Constitution of the United States, are typical of the 1,595 commissioned officers who, according to the allegations in the plaintiffs' complaint, were denied the equal protection of the law based on the Memorandum of Instruction issued by the Secretary of the Air Force.

■ The fifth *Quinault* requirement for class certification calls for the government to have acted on grounds generally applicable to the whole class. The plaintiffs assert that the essence of their claim is the uniform use of racial and gender classifications by the government, as a result of one secretarial Memorandum of Instruction issued as guidance for use by the FY93 RIF Board to determine which commissioned officers should be chosen for involuntary separation. The defendant does not address whether the alleged action by the government is generally applicable to the whole class; instead, in its brief, the government lumps together the fourth, fifth and seventh *Quinault* tests and propounds its view of the atypical nature of the proposed class action and the proposed class members.

The fifth *Quinault* test is satisfied in the above captioned case because the plaintiffs' claim alleges that one purportedly unconstitutional mandate issued by the Secretary of the Air Force was the cause of plaintiffs' loss of equal protection under the Constitution. *See Moore v. United States,* 41 Fed.Cl. at 400 (holding that the fifth *Quinault* factor was met because "the Amendments impact all class members. The government did not act separately as to landowners; rather its actions affected them simultaneously."); *Buchan v. United States,* 27 Fed.Cl. at 225 (the fifth *Quinault* test was met because "the government acted on grounds generally applicable to the whole class by denying each prospective class member regularly-scheduled overtime pay for work during the riot.");

*Armitage v. United States,* 18 Cl.Ct. at 313 (the fifth *Quinault* test was met because the court was satisfied that the government acted in a way generally applicable to the whole class and the "action [did] not appear to be one which, at least at the liability phase, implicate[d] matters unique to a given employee or job.").

■ The sixth factor of *Quinault* directs this court to inquire whether the claims of the plaintiffs are so small that it is doubtful that otherwise the claims would be pursued, but for certification of the class action. The "class-action device was designed to allow an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki,* 442 U.S. 682, 700–01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). Although each person involved in litigation has a significant interest in individually controlling the prosecution of his or her case, those interests "may be no more than theoretic where the individual stake is so small as to make a separate action impracticable." *See Amchem Products v. Windsor,* 521 U.S. at 616, 117 S.Ct. 2231 (citing Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I),* 81 Harv. L.Rev. 356 (1967) (footnotes omitted in original)). If the approximately potential 1,595 alleged class members, who are located throughout the United States, were to bring their not-so-large claims individually, it could be cost prohibitive for some, if not many.

■ The seventh requirement of the *Quinault* test, that the named plaintiffs will fairly and adequately protect the interests of the class without a conflict of interest, is satisfied by the eleven named plaintiffs. All of the plaintiffs are requesting reinstatement and compensation for the involuntary separation caused by the alleged discriminatory decisions made by the FY93 RIF Board as a result of the Secretary's Memorandum of Instruction. Thus, the plaintiffs argue that they can adequately represent all former commissioned officers who seek relief pursuant to the Fifth Amendment of the United States Constitution for actions by the FY93 RIF Board. Neither side has raised any issue with regard to a possible conflict of

interest regarding any of the named plaintiffs. Moreover, after the benefit of briefings and oral presentations, it is clear to the court that as to the liability issues raised in this case, the plaintiffs and their attorneys can and will fairly and adequately protect the interests of the class. The court believes that, should a decision in favor of the plaintiffs on the facial challenge to the Secretary's directive result in the need to address potential differences among individual claimants' claims for reinstatement and/or entitlement to differing sums of money, the court then can devise a mechanism to handle those issues, having already benefitted greatly by certifying the class, both in terms of time and funds expended by the parties and the court.

■ The eighth and final consideration for certification under the *Quinault* test is whether the prosecution of individual actions by members of the purported class would create a risk of inconsistent or varying adjudications. As a general rule, military pay cases come under the review jurisdiction of the United States Court of Appeals for the Federal Circuit. 28 U.S.C. § 1295(a)(2) (1994); 28 U.S.C. § 1346(a)(2) (1994). Consequently, the applicable precedent is generated in one appellate court.

The United States Supreme Court explained the pattern of judicial review in *United States v. Hohri*, 482 U.S. 64, 72–73, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987), as follows:

> Tucker Act claims for more then $10,000 may be brought only in the United States Claims Court. 28 U.S.C. § 1491(a)(1). Decisions of the United States Claims Court are appealable only to the Federal Circuit, not the regional courts of appeals. § 1295(a)(3). Claims for less than $10,000 (*i.e.*, Little Tucker Act claims) may be brought either in federal district court or in the United States Claims Court. § 1346(a)(2). These claims, so long as they are not related to federal taxes, also are appealable only to the Federal Circuit. §§ 1295(a)(2), (3). A conspicuous feature of these judicial arrangements is the creation of exclusive Federal Circuit jurisdic-

tion over *every appeal* from a Tucker Act or nontax Little Tucker Act claim.

*Id.* at 72–73, 107 S.Ct. 2246; *see, e.g., Randall v. United States*, 95 F.3d 339, 346 (1996) ("[t]he United States Court of Appeals for the Federal Circuit, not the regional courts of appeals, hear cases based in 'whole or in part' on the Tucker Act. 28 U.S.C. 1295(a)(2)."); *Wyatt v. United States*, 2 F.3d 398 (1993) (a military pay case in which the appeal was adjudicated by the United States Court of Appeals for the Federal Circuit).

The court in *Taylor v. United States* similarly concluded that "the eighth *Quinault* criterion is no longer applicable because the Federal Circuit hears all appeals from the district courts and this court in cases involving requests for money damages from the government." 41 Fed.Cl. at 447 (citing *Moore v. United States*, 41 Fed.Cl. at 400). The eighth factor, therefore, should not prevent this court from certifying a class action in the above-captioned case.

Prior decisions also have suggested that an expiring statute of limitations is a "legitimate concern" when deciding whether or not to certify a class, and one which weights in the plaintiff's favor. *See Moore v. United States*, 41 Fed.Cl. at 400 (citing *Armitage v. United States*, 18 Cl.Ct. at 315). In the instant case, if the class certification is not granted, the former commissioned officers who have not joined in the action would be precluded from filing any future claims against the FY93 RIF Board based on the applicable six year statute of limitations.[6] The above captioned case was filed by the named plaintiffs on December 30, 1998, on the very eve of the expiration of the six year statute of limitations, which commenced to run on December 30, 1992. The potential class numbers 1,595 commissioned officers involuntarily separated when the FY93 RIF Board determined the commissioned officers selected for involuntary separation. Although as pointed out in *Moore v. United States*, 41 Fed.Cl. at 400, an expiring statute of limitations is not sufficient reason to grant class action status, and other reasons not to grant class certification can outweigh such concerns, it is appropriate for

---

6. 28 U.S.C. § 2501 (1994).

a court to give some consideration to this concern in the interests of justice.

The certification of a class in the case at bar serves the best interests of justice. "So long as relief is confined to a money judgment, there is nothing in the type of jurisdiction we have, or the fact that claims in this court are normally against the United States, to deprive us of this modern aid to speedier and less repetitious litigation." *Quinault v. United States*, 197 Ct.Cl. at 137–138, 453 F.2d 1272.

In sum, the United States Supreme Court has written:

> The class-action device was designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." For in such cases, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23."

*General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (citations omitted).

### CONCLUSION

Based on the above discussion and in the interests of justice, judicial economy and judicial efficiency, this court will certify the class as an opt-in class in accordance with the plaintiffs' motion. To certify the class as requested by the plaintiffs will conserve precious judicial resources, as well as the resources of both the plaintiff and the defendant. At this stage of the proceedings, the two identified liability issues involved in the case before the court are common and typical to the class as a whole, and do not present factual differences, moreover, they are applicable to each plaintiff in the same manner. The liability issues presented by the complaint and discussed at the oral argument are whether the Memorandum of Instruction issued by the Secretary was facially defective

or not and, even if found to be facially defective, whether or not individual plaintiffs are entitled to *per se* application of that finding to their individual case histories. Issues regarding damages will be deferred. The designated class representative can adequately represent the manageable class without a conflict of interest, and to certify the class would eliminate a serious potential for inconsistent adjudications.

In reaching its decision, the court has considered the potential benefits of certifying a class in the case and of the alternative procedural tools available to handle multi-party lawsuits stemming from the same basic factual allegation. As pointed out in *Quinault Allottee Ass'n v. United States*, 197 Ct.Cl. at 137, 453 F.2d 1272, under 28 U.S.C. § 2071 (1994), this court can prescribe rules of conduct for conducting its own business. In fact, the court as a whole and individual judges have an ongoing obligation to continually devise ways to increase judicial efficiency and to reduce costs in a litigious age. A number of previous decisions have described this court as favoring the test case approach or the case consolidation method for dealing with multiple claims litigation. Although useful tools, these are not the only ones available, and they, too, have inherent risks, including the potential for misunderstandings and disagreements as to the application of test case results, and the refusal by counsel to resolve remaining cases based on completed test cases. Procedurally, test cases may move the parties to engage in settlement negotiations for the remaining cases. Although often successful, and, generally, good faith causes all the parties to move forward towards successful conclusions, the test case methodology is not a foolproof methodology. With the numerous group of potential plaintiffs presented in the instant case, case consolidation and the test case methodology would not be the most efficient way to proceed. Plaintiffs' motion to certify plaintiffs as representatives of the class is **GRANTED**.

**IT IS SO ORDERED.**