**Barry LEBEAU, Individually and on behalf of all other persons similarly situated, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV. 02–4168.**

United States District Court, D. South Dakota, Southern Division.

Feb. 10, 2004.

---

Charles Rick Johnson, Johnson, Eklund, Nicholson & Peterson, Gregory, SD, John M. Grossenburg, Winner, SD, Mark V. Meierhenry, Danforth, Meierhenry & Meierhenry, Sioux Falls, SD, for Plaintiff.

Jan L. Holmgren, United States Attorney's Office, Sioux Falls, SD, for Defendant.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

Pending before the Court is Plaintiff's Motion to Certify Class Action, Doc. 14. The motion has been fully briefed by the parties and will be decided based upon the written record in this action.

### BACKGROUND

This action was brought pursuant to the "Little" Tucker Act, 28 U.S.C. § 1346(a)(2). Plaintiff filed this action seeking an award of money damages for the Defendant's breach of trust in unreasonably delaying the distribution of a judgment fund, which resulted in Plaintiff's share in the fund being decreased by 28.3995% when Congress enacted the Mississippi Sioux Tribes Judgment Fund Distribution Act of 1998 ("the 1998 Act"), Pub.L. No. 105–387, 112 Stat. 3471 (codified at 25 U.S.C. § 1300d–21 *et seq.*). The fund was appropriated in 1968, Pub.L. No. 90–532, 82 Stat. 239, and in 1972 Congress allocated 25.0225% of the fund for distribution to Sisseton and Wahpeton Mississippi Sioux Tribe lineal descendants who were not members of certain listed tribes. *See* Pub.L. No. 92–555, 86 Stat. 1168 (codified at 25 U.S.C. § 1300d, *et seq.* (1983) (amended 1998)). For ease of reference, the Court will refer to this fund as "the Judgment Fund." In order to distribute the Judgment Fund, Congress directed that a roll of lineal descendants be prepared. *See* 25 U.S.C. §§ 1300d–3(b) and 1300d–4(c) (1983) (amended 1998). Plaintiff claims that Defendant is liable for unreasonably delaying the preparation of the roll, which was a prerequisite to distribution of the lineal descendants' share of the Judgment Fund. The 1998 Act reallocated 28.3995% of the lineal descendants' share of the Judgment Fund to the tribes who were also beneficiaries of the Judgment Fund in 1972. The tribes received their distributions from the Judgment Fund years before they lobbied Congress to enact the 1998 Act. Thus, the only money remaining in the Judgment Fund was allocated to the lineal descendants at the time the 1998 Act was enacted.

This action was filed after the Court denied class certification in an action entitled *Casimir LeBeau v. United States,* CIV 99–4106 (D.S.D.), wherein the plaintiffs alleged the same claim the Plaintiff alleges in the present action. In an Order filed on February 5, 2002, the Court refused to certify a class in CIV 99–4106 because the motion for class certification was untimely. *See LeBeau,* CIV 99–4106 (Doc. 107, Feb. 5, 2002). The merits of the class certification issue were not addressed by the Court in CIV 99–4106.

The Court stayed this action on March 4, 2003 pending a final determination in *LeBeau,* CIV 99–4106. The stay was dissolved on August 12, 2003 when the *LeBeau,* CIV 99–4106, action was final. (Order Lifting Stay, Doc. 9.) The two plaintiffs in *LeBeau,* CIV 99–4106, prevailed on their breach-of-trust claim for delay, which is the same claim alleged by Plaintiff in this action, and they were each awarded $482.79 plus interest. *See LeBeau v. United States,* 215 F.Supp.2d 1046, 1064 (D.S.D.2002). The damage award was calculated based upon a partial distribution that the Bureau of Indian Affairs' ("BIA") Aberdeen Area Office requested to make to approximately 1,900 lineal descendants in 1982. *See id.* at 1051, 1062–63. The amount of the partial distribution would have been $1,700 per lineal descendant if the BIA would have approved it. *See id.* The damages were calculated by multiplying the partial distribution of $1,700 by 28.3995%, which was the amount the lineal descendants' share was decreased pursuant to the 1998 Act. Plaintiff seeks the same award of money damages in this action, on behalf of himself, and on behalf of the remainder of the approximately 1,900 other lineal descendants who were eligible to share in the partial distribution requested by the Aberdeen Area Office in 1982. He requests that a class be certified in this action.

## DISCUSSION

When properly maintained, a class action promotes judicial efficiency and, in addition, may provide a remedy to persons for whom it would not be economically feasible to obtain relief individually. *See Deposit Guaran-*

*ty Nat'l Bank v. Roper,* 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). To bring a class action under the Federal Rules of Civil Procedure, a plaintiff must meet both the general prerequisites for class actions in Rule 23(a) as well as the requirements for at least one of the subdivisions of Rule 23(b). Fed.R.Civ.P. 23. Plaintiff seeks certification under both Rule 23(b)(1)(B) and Rule 23(b)(3). Certification is not irreversible and may be altered or amended as the case progresses towards resolution on the merits. Fed.R.Civ.P. 23(c)(1)(C) (amended Dec. 1, 2003).

### A. *Prerequisites*

Rule 23(a) lists four prerequisites for the maintenance of a class action:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). These prerequisites are usually referred to as numerosity, commonality, typicality, and adequacy of representation.

### 1. *Numerosity*

Plaintiff has shown that the proposed class is sufficiently numerous to warrant class certification. The Court previously found there were approximately 1,900 lineal descendants to which the Aberdeen Area Office requested a partial distribution be paid. *See LeBeau,* 215 F.Supp.2d at 1051. Although a lesser number may be sufficient, a rule of thumb is that a class of forty members satisfies the numerosity requirement. *See Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995) (citing 1 *Newberg on Class Actions 2d* § 3.05 (1985)).

Defendant contends that the numerosity requirement is not met in this case because Plaintiff has failed to establish that any of the lineal descendants would be interested in

participating in this lawsuit, as they will receive their share of the Judgment Fund even if they do not participate in this lawsuit. Another argument advanced by the Defendant in the numerosity discussion is that lineal descendants have disincentives for joining this lawsuit, including that they may not want to pay for attorney fees out of their share of the Judgment Fund and they may not want to take the risk that while this litigation is pending Congress could reduce the lineal descendants' share of the Judgment Fund even further than it did by the 1998 Act. These arguments are unfounded.

Plaintiff does not have an obligation to establish that any particular number of lineal descendants would be interested in participating in this lawsuit. Moreover, the basis of Defendant's arguments is that a recovery by the class members in this case would be paid from the Judgment Fund and that a delay in this action would allow Congress the opportunity to further reduce the lineal descendants' share of the Judgment Fund. Defendant's arguments fail to address the theory of recovery in this action. The theory of recovery in this action, on which the plaintiffs in CIV 99–4106 prevailed, is that the lineal descendants are entitled to money damages for the delay in preparing the roll and distributing the Judgment Fund and that they were damaged when Congress enacted the 1998 Act. Although the *amount* of the money damages is calculated based upon the lineal descendants' original share of the Judgment Fund, the money will not be paid from the Judgment Fund. The end result is that if a class is certified and the Court rules in favor of the class, the class members will recover *both* their current share of the Judgment Fund *and* money damages for the amount their share of the Judgment Fund was reduced by the 1998 Act. It is conceivable that if Congress does further reduce the lineal descendants' share, the lineal descendants could seek to recover additional money damages for any such further diminishment of their shares.

### 2. Commonality

█ Although Rule 23(a) requires questions of law or fact common to the class, those questions do not have to be identical as applied to each member of the class. *See Paxton v. Union National Bank*, 688 F.2d 552, 561 (8th Cir.1982) (stating that "the rule does not require that every question of law or fact be common to every member of the class"). Defendant argues that "there remains a statute of limitations question as to when each individual lineal [descendant] knew or should have known of the alleged breach of trust for purposes of tolling the statute of limitations against each individual plaintiff." (Response to Motion to Certify Class, Doc. 17 at 3.) This argument is without merit based upon the Court's decision in *LeBeau*, 215 F.Supp.2d at 1056–57. The Court held that "plaintiffs' cause of action for breach of trust for money damages under the 'Little' Tucker Act, 28 U.S.C. § 1346(a)(2), did not *accrue* until plaintiffs first suffered a financial loss, thus fixing the United States' liability for damages for breach of trust and entitling plaintiffs to institute this action." *Id.* at 1057 (emphasis added). Thus, the Court did not hold that the statute of limitations was *tolled*, requiring an individualized determination of each lineal descendants' knowledge. Rather, the Court held the lineal descendants' breach-of-trust claims did not even *accrue* until the passage of the 1998 Act.

The Court finds that there are both questions of law and fact that are common to the proposed class. Rather than requiring an individualized determination, it appears that each of the lineal descendants' claims are identical and their damages are identical. All class members will be seeking money damages for Defendant's breach of trust in delaying the preparation of the roll and distribution of the Judgment Fund, as did the plaintiffs in *LeBeau*, CIV 99–4106.

### 3. Typicality

█ Plaintiff has also established typicality. "Typicality under Rule 23(a)(3) means that there are other members of the class who have the same or similar grievances as the plaintiff." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (quotation marks and citation omitted). Variations in the facts underlying the claims

of the plaintiff and the potential class members will not preclude class certification if the plaintiff's claims arise from the same event or course of conduct as the class claims, and give rise to the same legal or remedial theories. *See id.* Defendant advances the same argument regarding the statute of limitations in contending Plaintiff's claims are not typical of the class members' claims as it did in relation to the commonality requirement. The statute of limitations argument is rejected for the same reasons set forth above. Plaintiff's claims arise from the same course of conduct, or lack thereof, as the class claims and his claims give rise to identical legal and remedial theories.

### 4. *Adequacy of Representation*

■ Plaintiff is an adequate representative for the class. "The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton,* 688 F.2d at 562–63. Plaintiff has common interests with the members of the class; the primary interest being to seek money damages for the United States' breach of trust. Plaintiff has vigorously prosecuted the interests of the class to this point in the litigation.

■ One portion of the adequacy requirement is that class counsel be qualified to represent the class. *See Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 589 (W.D.Tex. 2002) ("In undertaking an inquiry into adequacy, the Court considers the conflicts of interest of the class counsel, as well as the class representatives."). The first issue to be decided regarding counsel is whether attorney Rick Johnson can be named as co-counsel for the class with attorney Mich Grossenburg. Defendant has objected to Mr. Johnson being named as co-counsel for the class because he has a conflict of interest with the proposed *LeBeau* class based upon his representation of the plaintiffs in an action entitled *Loudner v. United States,* CIV 94–4294 (D.S.D.). The plaintiffs in *Loudner* asserted a breach of trust claim against the United States for failing to notify them of

the existence of the Judgment Fund. *See Loudner v. United States,* 108 F.3d 896 (8th Cir.1997). The *Loudner* plaintiffs prevailed, and the application period to share in the Judgment Fund was reopened. *See id.* at 903. The BIA is currently in the appeal process of determining the eligibility of those lineal descendants who have submitted applications pursuant to the *Loudner* decision.

For every individual found eligible to share in the Judgment Fund pursuant to the reopening of the application process due to the *Loudner* action, the individual shares of the proposed *LeBeau* class are reduced. Several thousand individuals have been found eligible to share in the Judgment Fund as a result of the *Loudner* action, and there are still approximately 19 appeals pending at this time. The Court finds that if Mr. Johnson were named as co-counsel for the proposed *LeBeau* class, he would have a conflict of interest based upon his representation of those individuals who are appealing their denial of eligibility to share in the Judgment Fund as a result of the reopening of the application process pursuant to the *Loudner* action. *See* SDCL § 16–18, Appx., Rule 1.7 (1995). The record contains no evidence that Mr. Johnson has sought or obtained waivers of the conflict. Thus, the Court will not appoint Mr. Johnson as co-counsel for the class.

■ The second issue is whether Mr. Grossenburg can adequately represent the class without associating with other counsel. Counsel for the class must "fairly and adequately represent the interests of the class." Fed.R.Civ.P. 23(g)(1)(B) (as amended Dec. 1, 2003). The Court must consider the following factors in appointing class counsel:

- the work counsel has done in identifying or investigating potential claims in the action,
- counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,
- counsel's knowledge of the applicable law, and
- the resources counsel will commit to representing the class[.]

Fed.R.Civ.P. 23(g)(1)(C)(i) (amended Dec. 1, 2003). Any other matter pertinent to coun-

sel's ability to fairly and adequately represent the class may also be considered by the Court in making the class counsel determination. *See* Fed.R.Civ.P. 23(g)(1)(C)(ii). In considering the resources that counsel will commit to representing the class, the Court may consider the staff, supplies and professional commitments of that attorney. 5 James Wm. Moore, *et al., Moore's Federal Practice,* § 23.25[5][b][iii] (3d ed.2003).

The Court finds that Mr. Grossenburg is not equipped to represent the class without associating with other counsel. While Mr. Grossenburg was the sole attorney of record for the *LeBeau,* CIV 99–4106 action, the attorney fee requests submitted by Mr. Grossenburg and Mr. Johnson in that case indicate that Mr. Johnson continued to assist Mr. Grossenburg with prosecuting that action on the merits. That case was not a class action. Mr. Grossenburg has a solo practice apparently without any staff assistance and he does not explain how he would handle the work load of a class action. Rather, he asks that the Defendant be required to prepare and mail the class notices. There is no evidence in the record that Mr. Grossenburg has handled other class actions, or that his office has any staff to, for example, prepare the class notice, mail the nearly 2,000 notices, field telephone calls from class members with questions and track the class members who opt out of the class. Although Mr. Grossenburg may know the law surrounding the breach of trust claim, there is nothing in the record to demonstrate that he has knowledge of class action law. There is no representation in the record regarding how many resources Mr. Grossenburg has to commit to representing the proposed class. Based upon an examination of the relevant factors under Rule 23(g)(1)(C)(i), the Court is unable to find that Mr. Grossenburg is capable of adequately represent the interests of the class by himself.

Because this action is unquestionably best suited for a class action, as explained in the discussion of the prerequisites other than adequacy, and the only unsatisfied prerequisite is adequacy of counsel, the Court will take the unusual step of appointing counsel to lead the representation of the proposed class, with Mr. Grossenburg being retained as co-counsel. This action is unlike other class actions where the Court is unfamiliar with the class claims when the lawsuit is initiated. The Court has presided over this litigation, involving the *Loudner,* CIV 94–4294, and *LeBeau,* CIV 99–4106, actions for nearly ten years. A ruling was issued in *LeBeau,* CIV 99–4106, addressing the identical issues raised in the present action. As recognized in Moore's Federal Practice:

> A court has the inherent power under Rule 23(d)(1) to appoint class counsel. That power enables the court to assure that the litigation will be conducted with a minimum of confusion and expense . . . . .
>
> The court has broad discretion in appointing counsel for the class. In most cases, courts have approved the selections made by counsel to the class representatives. However, a court may impose its own choice in extraordinary circumstances.

5 James Wm. Moore, et al., *Moore's Federal Practice,* § 23.65[2] (3d ed.2003). Considering the delay that the proposed class has already endured, the Court will exercise its discretion to appoint attorney Mark Meierhenry as lead counsel for the proposed class. In contemplating this decision, the Court contacted Mr. Meierhenry to inquire whether he would be willing to represent the proposed class. Mr. Meierhenry stated that he is willing to accept this appointment.

Mr. Meierhenry has practiced before this Court for many years and has ably handled complex litigation in the past. His law office is well-equipped to handle this action, having the necessary staff, supplies and resources to represent the proposed class. Mr. Meierhenry will commit the resources necessary to zealously represent the proposed class. While Mr. Meierhenry is unfamiliar with the class claims at this point, the Court is confident that with the assistance of Mr. Grossenburg, he will quickly become familiar with the issues and applicable substantive law in this case. Considering the relevant factors under Rule 23(g)(1)(C)(i), the Court finds that Mr. Meierhenry, as lead counsel, and Mr. Grossenburg as co-counsel will adequately represent the interests of the proposed class.

## B. *Certification Under Rule 23(b)(1)(B)*

If the prerequisites are met, an action may be maintained as a class action if "the prosecution of separate actions by . . . individual members of the class would create a risk of . . . adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." Fed. R.Civ.P. 23(b)(1)(B). Plaintiff argues that if he proceeds with his individual claim and prevails on the claim, but then the decision in his favor is reversed on appeal, it would be dispositive of the interests of the other lineal descendants not parties to this action. While Plaintiff's argument could possibly occur, the Court need not rule on that issue, because Plaintiff clearly meets the requirements for certification under Rule 23(b)(3), and a class will be certified under that subsection.

## C. *Certification Under Rule 23(b)(3)*

■ Rule 23(b)(3) permits certification if the prerequisites are met and if "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Defendant opposes certification under Rule 23(b)(3) because "the statute of limitations tolling question predominates." (Response to Motion to Certify Class, Doc. 17.) In addition, Defendant argues that Plaintiff has not identified any benefit to be served by adding other individuals to the lawsuit and it seems unlikely to Defendant that denial of class certification will result in excessive litigation.

As explained above in the discussion of the commonality prerequisite, there is no statute of limitations issue to be resolved in this litigation. The benefit of adding other individuals to this lawsuit is obvious to the Court: those approximately 1,900 lineal descendants who have not filed a lawsuit and were eligible for a partial payment of their share of the Judgment Fund in 1982 may recover money damages in the amount that their shares were reduced by the 1998 Act. Moreover, in contrast to Defendant's argument, the Court finds that denial of class certification could likely result in excessive litigation. This action is unusual from other class actions in the sense that the Court has previously issued a decision against the Defendant on the identical issue the Plaintiff asserts. Thus, if class certification is denied, the remaining eligible lineal descendants could file a lawsuit similar to Plaintiff's action to recover the same money damages Plaintiff seeks.

As discussed in the commonality and typicality sections above, the issues to be resolved in this lawsuit are common to all proposed class members. The common question of fact and law clearly predominate over any questions affecting only individual members. In addition, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. If a class is not certified, the other eligible lineal descendants would be required to file their own lawsuit, at a minimum cost of $150.00 each for the filing fee, in order to recover $482.79 plus interest. There are no other actions pending before this Court by any other lineal descendants. A class action would be most efficient for the Court given that there are approximately 1,900 lineal descendants who could file separate lawsuits to recover the same amount of damages based upon the same theory of liability. Finally, the Court does not find that there are any significant difficulties to be encountered in the management of this lawsuit as a class action. The members of the proposed class were identified by the United States in 1982 when the Aberdeen Area Office requested that a partial payment be authorized. Given that the Defendant has the names and presumably the addresses of all of the eligible lineal descendants (because a partial payment was sent to the lineal descendants by the Defendant in 2002), this action will be easier to maintain than the normal class action where the class members must be identified. The prerequisites having been met, and the provisions in Rule 23(b)(3) having been satisfied, the Court will certify a class action.

## CONCLUSION

With the appointment of Mr. Meierhenry, the prerequisites for class certification in Rule 23(a) are met and the provisions of Rule 23(b)(3) are met. Thus, a class will be certified of:

All Sisseton and Wahpeton Sioux Tribe lineal descendants who were determined by the Aberdeen Area Office of the Bureau of Indian Affairs to be eligible in 1982 to receive a partial payment from the judgment fund appropriated in 1968, Pub.L. No. 105–387, 112 Stat. 3471, and to be distributed pursuant to the Act of October 25, 1972, codified at 25 U.S.C. § 1300d, *et seq.* (1983). Excluded from this class are those persons who timely request exclusion from this class.

As provided in Rule 23(c), the Court may alter or amend the definition of the class before final judgment. The Plaintiff shall prepare a form of notice to class members that complies with the requirements of Rule 23(c)(2)(B) (amended Dec. 1, 2003) of the Federal Rules of Civil Procedure, and file the proposed notice with the Court in accordance with the Order below. Accordingly,

IT IS ORDERED:

1. That Plaintiff's Motion to Certify Class Action, Doc. 14, is granted to the extent that class certification is granted, but denied to the extent that Plaintiff requests Mr. Rick Johnson be appointed as co-counsel for the class.

2. That, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, a class is certified of all Sisseton and Wahpeton Sioux Tribe lineal descendants who were determined by the Aberdeen Area Office of the Bureau of Indian Affairs to be eligible in 1982 to receive a partial payment from the judgment fund appropriated in 1968, Pub.L. No. 105–387, 112 Stat. 3471, and to be distributed pursuant to the Act of October 25, 1972, codified at 25 U.S.C. § 1300d, *et seq.* (1983). Excluded from this class are those persons who timely request exclusion from this class.

3. That Mr. Mark Meierhenry is appointed as lead counsel for the class and Mr. Mick Grossenburg is appointed as co-counsel for the class.

4. That, on or before March 22, 2004, Plaintiff shall file and serve a proposed form of notice to class members that complies with the requirements of Fed. R.Civ.P. 23(c)(2)(B).

5. That, on or before March 31, 2004, the Defendant shall file and serve any objections to the Plaintiff's form of notice to class members.