Yolanda A. JOHNSON and Patricia L. Medina, Individually, and on Behalf of all Those Similarly Situated, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. Civ.A. SA–99–CA–1357–FB.

United States District Court,
W.D. Texas,
San Antonio Division.

Sept. 25, 2006.

Daniel W. Bishop, II, Bishop London Brophy & Dodds PC, Jerry Galow, Galow Smith & Morrison, PC, Austin, TX, Franklin D. Houser, San Antonio, TX, Phillip H. Schmandt, Jones Day, Armando Lopez, Armando Lopez, P.C., Houston, TX, Larry R. Daves, Colorado Legal Services, La Junta, CO, Woodrow M. Roark, Law Offices of Woodrow M. Roark, P.C., Tyler, TX, for Plaintiffs.

Harold E. Brown, Jr., Susan B. Biggs, Winstanley F. Luke, Assistant United States Attorney, San Antonio, TX, for Defendant.

### ORDER ON MOTION FOR OPT-IN CLASS CERTIFICATION

BIERY, District Judge.

### A SEAFARING PROLOGUE ABOUT AN AIR FORCE BASE CASE

Plaintiffs ask the Court to make new law regarding class action procedure in Little Tucker Act cases in the United States District Courts and not abide by the Federal Rules of Civil Procedure. Or as plaintiffs' counsel cleverly states: An opportunity to "eat the first shrimp" [1] by certifying an opt-in class in this case about Kelly Air Force Base toxic water and soil. Holy Mackerel; what an invitation!

Though plaintiffs' counsel makes a whale of an argument, the appellate sharks may find it fishy if an Article III federal trial court were to crawfish on its obligation to follow Congressional intent and the Article III judicial chain of command, absent a proper precedential hook. Plaintiffs want this Court to abandon its Article III ship and take up the oar of the Article I Court of Federal Claims Rules. Were the Court to take plaintiffs' bait, it would probably be reversible bottom feeding. Moreover, shrimp are said to be high in cholesterol and this Court prefers red herring, actual not metaphorical.[2] For reasons anchored in legal, non-aquatic concepts, plaintiffs' motion for opt-in class certification is sunk.

\* \* \* \* \* \*

Before the Court are Plaintiffs' Motion for Opt In Class Action Certification filed February 27, 2006 (docket # 89); Response to Plaintiffs' Motion for Opt–In Class Certification filed June 23, 2006 (docket # 99), and Plaintiffs' Reply to Defendant's Response to Motion for Class Certification filed July 18, 2006 (docket # 102). In their motion, plaintiffs seek to have the Court certify an opt-in class in this case pursuant to rule 23(c)(1) of the United States Federal Court of Claims and rule CV–23 of the Western District of Texas Local Rules. Plaintiffs assert at the time they filed their original motion for class certification, the Federal Court of Claims had no procedural rules concerning opt-in classes. However, in 2002 and 2004, the United States Federal Court of Claims modified their rules to allow opt-in classes. Therefore, because this case involves a Little Tucker Act matter, this Court is essentially sitting as a "Little Court of Claims" and should apply the same procedural rules as the Court of Claims. Plaintiffs also maintain the creation of an opt-in class eliminates the Court's previous concern of a knowing waiver of damages in excess of $10,000 by class members without actual notice and a written waiver. Defendant contends four reasons support denial of plaintiffs' request: (1) the procedural rules of the Court of Federal Claims do not apply to this case because the Court of Federal Claims promulgates its own rules pursuant to its own rulemaking authority; (2) rule 23 of the Federal Rules of Civil Procedure is the sole source of power for a

---

1. *Plaintiffs' Reply to Defendant's Response to Motion for Class Certification,* docket # 102 filed July 18, 2006, at page 3.

2. A red herring is defined as "an irrelevant legal or factual issue." BLACK'S LAW DICTIONARY 1282 (7th ed.1999). Apparently, this use is derived from the term "drawing a red herring across the path" which has been explained as follows:

Trying to divert attention from the main question by some side issue. A red herring (*i.e.* one dried, smoked, and salted) drawn across a fox's path destroys the scent and sets the dogs at fault.

THE WORDSWORTH DICTIONARY OF PHRASE & FABLE 528 (Ivor H. Evans, ed., Wordsworth Editions Ltd. 1994) (1970).

district court to certify a class action and provides only for opt-out classes; (3) the district court does not have equitable power to fashion an opt-in class, and (4) this case does not meet the requirements for class certification under the Federal Rules of Civil Procedure.

Plaintiffs present this Court with a unique procedural issue and opportunity to be the Court to "eat the first shrimp" and certify an opt-in class. Plaintiffs maintain an opt-in class is permissible on five bases:

1. In Little Tucker Act cases, the district court sits as a "Little Court of Claims" with only the jurisdiction vested to Article I Courts.

2. Sitting as an Article III court, the district court has no discretion to allow an opt-in class during the liability phase of a case.

3. When sitting in a Little Tucker Act case, the district court has no discretion to use the laws of Congress or the Federal Rules of Civil Procedure to expand its jurisdiction beyond an Article I Court, i.e., "[i]f the Court of Claims cannot do it, neither can this Court."

4. The Fair Labor Standards Act required opt-in classes, and that mechanism was used by federal district courts sitting in Little Tucker Act cases despite the mandate of rule 23 of the Federal Rules of Civil Procedure.

5. Prior to 2002 (this Court's previous order concerning class certification was signed in 2001), the Federal Court of Claims had no specific rule requiring opt-in classes.

Accordingly, plaintiffs state the issue becomes whether the recent enactment of the Rules of the Court of Federal Claims (RCFC) which requires opt-in classes applies only in the Court of Claims or whether this Court also must apply the RCFC or may choose between the Federal Rules of Proce-

dure and the RCFC when sitting as a Little Tucker Act court. Plaintiffs believe this Court should find the opt-in mechanism available to the district courts in the limited circumstances of Little Tucker Act cases. Plaintiff find support for their contention in the following: (1) the fact that district courts in Fair Labor Standards Act cases against the government pursuant to the Little Tucker Act create opt-in classes; (2) the district courts' power and jurisdiction is limited when it sits in a Little Tucker Act case; (3) the opt-in mandate under the Fair Labor Standards Act is analogous to the opt-in mandate in the Federal Court of Claims, and (4) application of the opt-in mechanism promotes justice, provides consistency, and is sound public policy.

## DISTRICT COURTS HAVE CREATED OPT–IN CLASSES WITHOUT VIOLATING THE FEDERAL RULES OF CIVIL PROCEDURE IN FLSA CASES SO WHY NOT HERE?

Plaintiffs note Congress, in enacting the Fair Labor Standards Act (FLSA), required the creation of opt-in classes in certain circumstances. Therefore, despite the power given to the district courts pursuant to Article III, the Rules Enabling Act,[3] and rule 23 of the Federal Rules of Civil Procedure providing for opt-out classes, district courts in FLSA cases have "donned the mantle of the Little Tucker Act" and have time and time again created opt-in classes citing *Saraco v. Hallett,* 831 F.Supp. 1154 (E.D.Pa.1993); *Parker v. King,* 935 F.2d 1174 (11th Cir. 1991); *United States v. Cook,* 795 F.2d 987 (Fed.Cir.1986) and *Brooks v. Weinberger,* 637 F.Supp. 22 (D.D.C.1986). Because the district court's jurisdiction to entertain FSLA cases is created via the Little Tucker Act, plaintiffs contend the district courts have applied and can apply the opt-in mechanism to all class action cases and should do so here.

---

**3.** The Rules Enabling Act of 1934 "conferred upon the Judiciary the power to promulgate federal rules of civil procedure." *Mistretta v. United States,* 488 U.S. 361, 387, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Pursuant to this power, Congress "expressly has authorized this Court to establish rules for the conduct of its own business and to prescribed rules of procedure for lower federal courts in bankruptcy cases, in other civil cases, and in criminal cases." *Id.* at 388, 109 S.Ct. 647.

While this Court could create an opt-in class if plaintiffs were asserting FLSA claims, this is not a Fair Labor Standards Act case. The cases on which plaintiffs rely to support their opt-in request all involved federal employees asserting FLSA claims against the federal government and not, as here, Fifth Amendment takings claims asserted by various citizens against the United States. *See Parker*, 935 F.2d at 1175 (employees of Social Security Administration claiming violations of FLSA); *Cook*, 795 F.2d at 988 (seven federal firefighters claiming violations of FLSA); *Saraco*, 831 F.Supp. at 1156 (employees of United States Customs Service claiming violations of the FLSA by the Customs Service); *Brooks*, 637 F.Supp. at 23 (federal law enforcement officers claiming FLSA violations). In fact, these cases discuss the basis of court's jurisdiction in FLSA cases but do not appear to find opt-in classes are warranted based on Tucker or Little Tucker Act jurisdiction. Instead, the specific language of the FLSA provides the basis.

■ 29 U.S.C. § 216(b) contains the damages provision of the FLSA:

An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. *No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.*

(Emphasis added). This Court holds the latter language as being specific to FLSA claims and not as a mandate or option for district courts to use in any other Little Tucker Act case. As the following cases discuss, Congress enacted the Tucker and Little Tucker Act to waive the United States'

sovereign immunity in certain cases and provide jurisdiction and venue in certain courts to hear those claims—nothing more.

In *Parker v. King*, 935 F.2d 1174, 1177 (11th Cir.1991), the issue to be resolved was "whether the Tucker Act provide[d] the *sole* basis for a court to hear an FLSA claim against the federal government." The court noted both the Federal Circuit and the Fifth Circuit had previously concluded the FLSA defined the cause of action but the Tucker Act provided the court with jurisdiction needed for the court to hear the claim against the federal government. *Id.* In holding the Tucker Act provides the basis for jurisdiction in federal courts for FLSA claims seeking compensation, the court agreed with the conclusion and rationale set forth by the district court in *Brooks v. Weinberger*, 637 F.Supp. 22, 24 (D.D.C.1986) as follows:

First ... the FLSA does not vest jurisdiction in a particular court.

* * * * * *

Second, the legislative history of the FLSA amendments of 1966, which added the "any court of competent jurisdiction" language quoted above,[4] indicates that the purpose for adding that language was not to supplant the Tucker Act, but rather to allow state and local employees to bring FLSA claims in federal court.

. . . .

Third, the language of the Tucker Act is all-inclusive.... Absent a specific Congressional grant of jurisdiction in a particular court ... the Tucker Act applies to any claim brought against the United States.

*Id.* at 1179 (footnote added).

In *United States v. Cook*, 795 F.2d 987, 990 (Fed.Cir.1986), the issues addressed by the court concerned whether the district court had abused its discretion in "compelling the United States to produce the requested names and addresses [of federal employees

---

**4.** The quoted language is from Section 216(b) of the Fair Labor Standards Act and provides, in part:

An action to recover the liability prescribed in either of the proceeding sentences may be maintained against any employer (including a

public agency) in any Federal or State court of competent jurisdiction by any one or more employees for an in behalf of himself or themselves and other employees similarly situated. 29 U.S.C. § 216(b).

receiving overtime pay];" and "tolling the statute of limitations." The court explained the action was being brought under the FLSA and the damage section allows an action to be brought:

> by any one or more employees *for and in behalf of himself or themselves and other employees similarly situated.* No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.* (emphasis in original). With respect to the last sentence, the court noted:

> Unlike Fed.R.Civ.P. 23, under which a class member must "opt out" not to be bound, a "class" member under § 16(b) must "opt in" to be bound. The Portal–to–Portal Act of 1947, Pub.L. No. 80–49, ch. 52 § 5(a), 61 Stat. 84, 87 (1947), in a section entitled "Representative Actions Banned", deleted provisions in the FLSA relating to the designation by employees of an agent or representative to maintain an action under § 16(b) for and on behalf of all employees similarly situated, *see* FLSA, ch. 676, § 16(b), 52 Stat. 1060, 1069 (1938), and added the opt-in provision.

*Id.* (case citations omitted). Further insight into the FLSA amendment revealed the following:

> The legislative history concerning The Portal–to–Portal amendment and its reference to banning "representative" actions, makes clear that Congress' concern did not relate to the type of action in which the present discovery order was issued. Senator Donnell, chairman of the subcommittee which conducted hearings on the amendments explained the rationale for § 16(b):
>
> > We now proceed to the final portion of the bill, Part IV. Section 8 contains a provision entitled "Representative Actions Banned." Let me just say a word about what is meant by representative actions. It will be recalled that in section 16(b) of the Fair Labor Standards Act there is a provision reading as follows:
> >
> > Action to recover such liability-

This is, the liability for unpaid minimum wages, unpaid overtime compensation, and liquidated damages-

> > Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.
> >
> > It will be observed, Mr. President, that two types of actions are permitted under this sentence in section 16(b) of the Fair Labor Standards Act of 1938: First, a suit by one or more employees, for himself and all other employees similarly situated. That I shall call for purposes of identification a collective action, a suit brought by one collectively for himself and others. The second class of actions authorized by that sentence embrace those in which an agent or a representative who may not be an employee of the company at all can be designated by the employee or employees to maintain an action on behalf of all employees similarly situated.
> >
> > \* \* \* \* \* \*
> >
> > So section 8 amends the Fair Labor Standards Act by eliminating that portion of section 16(b) which permits employees to designate an agent or representative to maintain an action for and in behalf of all employees similarly situated.

*Id.* at 992–93. The foregoing remarks by Senator Donnell were found by the court to be persuasive and bolstered by a District of Columbia court statement finding "the purpose of the ban on representative actions was to prevent large group actions, with their vast allegations of liability, from being brought on behalf of employees who had no real involvement in, or knowledge of the lawsuit." *Id.* at 993. The District of Columbia court found the foregoing further bolstered by:

> the provision requiring named party plaintiffs to opt in by filing written consent forms with the court. Together the amendments banning representative actions and requiring individual written consents sought "to eradicate the problem of

totally uninvolved employees gaining recovery as a result of some third party's action in filing suit."

*Id.* (quoting *Arrington v. National Broadcasting Co.,* 531 F.Supp. 498, 502 (D.D.C. 1982)).

In *Saraco v. Hallett,* 831 F.Supp. 1154 (E.D.Pa.1993), the issues raised by the defendant concerned whether the district court had jurisdiction and whether venue was proper. In denying the motion to dismiss and granting the motion to transfer the case to the Court of Federal Claims, the district court provided the following insight into Tucker and Little Tucker Act jurisdiction:

Analysis of this Court's jurisdiction must begin with the Tucker Act which is codified at 28 U.S.C. § 1346 and 1491. The Tucker Act creates no substantive right of recovery; rather it waives sovereign immunity and defines the limits of federal jurisdiction in actions against the United States for non-tort money damages. Section 1346 referred to as the Little Tucker Act, states in relevant part:

(a) The district courts shall have original jurisdiction, concurrent with the United States [Court of Federal Claims], of: ...

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. ...

28 U.S.C. § 1346. Section 1491, referred to as the Big Tucker Act, states in relevant part: The United States [Court of Federal Claims] shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

.... to the extent plaintiffs' FLSA claims exceed $10,000, such claims are within the

exclusive jurisdiction of the Court of Federal Claims and must be transferred to that court. For any of plaintiffs' claims that do not exceed $10,000, this Court has concurrent jurisdiction with the Court of Federal Claims under the Little Tucker Act.

*Id.* at 1159. In negating the plaintiffs' contention the FLSA "is a waiver of sovereign immunity" and jurisdiction in federal district courts is established by the general jurisdiction statutes found in 28 U.S.C. § 1331 and § 1337, the court explained:

Contrary to plaintiffs' position, the legislative history of the FLSA demonstrates that Congress did not intend the FLSA to waive the sovereign immunity of the United States. Section 216(b) of the FLSA, as originally enacted, was enforceable against employers generally, but did not cover federal employees or address waiver of sovereign immunity. Section 203 was amended in 1974 to expand the definition of employer to include a "public agency." Section 216(b) was also amended in 1974 to extend coverage under the act to federal, state and local public employees. As amended, the relevant portion of section 216(b) reads as follows: "an action to recover the liability ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction." The 1974 amendment to the FLSA did not address sovereign immunity.

*Id.* at 1161 (citations omitted). Accordingly, the court concluded the "waiver of sovereign immunity applicable to plaintiffs' claims is found in the Tucker Act." *Id.* With respect to the venue issue, the court explained the "weight of authority holds ... that under the Little Tucker Act, venue must be satisfied for each plaintiff." *Id.* at 1162. Relying on several previous district court cases, the court noted:

the history and purpose of the Little Tucker Act "embody Congress' deliberate efforts to channel certain types of cases to the [Court of Federal Claims] ... while allowing other claims to be heard concurrently by certain district courts." The court further explained that the Little Tucker Act venue provision "was deliber-

ately drafted to carve out a narrow exception to the jurisdiction of the Court of Claims"—to give persons with relatively small claims the option of bringing suit in the district where they and their witnesses reside. Such provision was not intended to diminish Court of Federal Claims jurisdiction over suits involving plaintiffs who reside in multiple judicial districts.

*Id.* at 1163 (quoting *Davila v. Weinberger,* 600 F.Supp. 599, 604 (D.D.C.1985)). The court also mentioned additional "deliberate efforts" by Congress in amending the Big Tucker Act in 1972 to "give the Court of Federal Claims the authority to grant equitable relief." *Id.* at 1165.

Because Congress has, over the years, amended the FLSA and Tucker Acts to restrict the types of actions which may be brought and provided specificity as to the jurisdiction of courts to hear certain types of claims, this Court holds that had Congress wanted the opt-in mechanism to be applied by the district courts sitting as a "Little Tucker Act" court it would have mandated same.

### BECAUSE THE POWER OF AN ARTICLE III DISTRICT COURT IS LIMITED WHEN IT SITS AS A LITTLE TUCKER ACT COURT WHY SHOULD IT NOT APPLY RULES OF PROCEDURE FROM THE ARTICLE I COURT OF CLAIMS?

Plaintiffs contend because a district court in FLSA cases can be given new rules of procedure to follow concerning class actions and because district courts sitting in Little Tucker Act cases have jurisdictional limitations to claims of $10,000 or less and appellate review of its Little Tucker Act decisions may proceed only in the Federal Circuit Court of Appeals, there is no reason it should not be allowed to apply a rule of procedure promulgated by the Court of Claims. In addition, plaintiffs rely on *United States v. Sherwood,* 312 U.S. 584, 587, 61 S.Ct. 767, 85 L.Ed. 1058 (1941), in support of their proposition because a district court sitting in a Little Tucker Act case could not hear related claims brought against individuals despite federal law or the Federal Rules of Procedure to the contrary. Defendant argues *Sherwood* does not support plaintiffs' proposition the rules of the Court of Federal Claims can and should be applied by this Court but concerns the jurisdiction of district courts in Little Tucker Act cases. The Court agrees.

The question for decision before the Supreme Court in *United States v. Sherwood,* 312 U.S. 584, 585, 61 S.Ct. 767, 85 L.Ed. 1058 (1941), was whether a United States District Court had the jurisdiction to entertain a case brought by a judgment creditor, pursuant to the Tucker Act, against the United States to recover damages for a breach of contract with a judgment debtor. Mr. Sherwood obtained an order from the New York Supreme Court authorizing him, as the judgment creditor who had recovered a judgment against Frederick Kaiser in the amount of $5,567.22, to bring suit against the United States pursuant to the Tucker Act for the Government's breach of contract with Mr. Kaiser "for the construction of a post office building." *Id.* Mr. Sherwood filed suit against the United States and Mr. Kaiser in the United States District Court for the Eastern District of New York. In his complaint, Mr. Sherwood:

set up the judgment and the order of the state court, the breach of contract by the United States, and the consequent damage to Kaiser in the sum of $14,448.49, and prayed judgment in the sum of $10,000. The order of the District Court dismissing the complaint for want of jurisdiction was reversed by the Circuit Court of Appeals for the Second Circuit, 112 F.2d 587, which held that under Rule 17(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, respondent's "capacity to sue" was governed by the law of New York which was his domicile; and that the order of the state court had conferred authority upon respondent to maintain the suit, the United States being a "person indebted" within the meaning of § 795 of the Civil Practice Act which sanctions orders by the state court authorizing a suit by a judgment creditor against a "person \* \* \* indebted to the judgment debtor."

*Id.* at 586, 61 S.Ct. 767. Finding the question of the district court's jurisdiction under the Tucker Act to be of public importance, certiorari was granted. *Id.* In reversing the court of appeals, the Court explained:

> The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit. Jurisdiction to entertain suits against the United States to recover damages for breach of contract and other certain other specified classes of claims was conferred on the Court of Claims by Act of February 24, 1855, 10 Stat. 612.... Section 2 ... confers jurisdiction on the district courts "Concurrent with the Court of Claims, of all claims not exceeding $10,000 founded * * * upon any contract, express or implied with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect to which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable * * *."

> The Court of Claims is a legislative, not a constitutional court. Its judicial power is derived not from the Judiciary Article of the Constitution, article 3, but from the congressional power "to pay the debts * * * of the United States," article 1, § 8, cl. 1, which it is free to exercise through judicial as well as non-judicial agencies. It is for this reason, and because of the power of the sovereign to attach conditions to its consent to be sued, that Congress, despite the Seventh Amendment, may dispense with a jury trial in suits brought in the Court of Claims.

> Except as Congress has consented there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States, or for the review of its decisions by appellate. For that reason it has been uniformly held, upon a review of the statutes creating the court and defining its authority, that its jurisdiction is confined to the rendition of money judgments in suits brought for that relief against the United States, and if the relief sought is against other than the United States the suit must be dismissed.

> We think it plain that the present suit could not have been maintained in the Court of Claims because that court is without jurisdiction of any suit brought against private parties and because adjudication of the right or capacity of respondent to proceed with the suit upon the contract of the judgment debtor with the United States is prerequisite to any recovery upon the Government contract. As the court below recognized, the judgment debtor, who is made a necessary party by § 795 of the Civil Practice Act, in any suit brought pursuant to the order of the state court is entitled to attack the validity of the order and of the judgment on which it is founded. Adjudication of that issue is not within the jurisdiction of the Court of Claims whose authority, as we have seen, is narrowly restricted to the adjudication of suits brought against the Government alone.

> But the question remains whether such a suit is nevertheless within the jurisdiction conferred by the Tucker Act on the district courts. The Court of Appeals thought that the obstacles to joining private parties, as parties defendant, in suits against the Government are procedural only, and that while no procedure is provided whereby the Court of Claims can adjudicate the rights of private parties in suits against the Government, that court is nevertheless free to adopt such a procedure. In any case it thought such procedure has now been made applicable to suits in the district courts by the new rules of civil practice. It concluded that since the District Court, under the Tucker Act had jurisdiction to adjudicate claims against the United States and by virtue of other provisions of the Judicial Code has jurisdiction to adjudicate the issues between respondent and the judgment debtor, the Rules of Civil Procedure authorize the exercise of both jurisdictions in a single suit.

> This conclusion presupposes that the United States, either by the rules of practice or by the Tucker Act or both, has given its consent to be sued in litigations in

which issues between the plaintiff and third persons are to be adjudicated. But we think that nothing in the new rules of civil practice so far as they may be applicable in suits brought in district courts under the Tucker Act authorizes the maintenance of any suit against the United States to which it has not otherwise consented. An authority conferred upon a court to make rules of procedure for the exercise of its jurisdiction is not an authority to enlarge that jurisdiction and the Act of June 19, 1934, authorizing this Court to prescribe rules of procedure in civil actions gave it no authority to modify, abridge or enlarge the substantive rights of litigants or to enlarge or diminish the jurisdiction of federal *courts.*

Nor with regard to the words of § 2 of the Tucker Act and to its legislative history can we say that the United States has consented to the maintenance of suits against the Government in the district courts which could not be maintained in the Court of Claims. The section must be interpreted in the light of its function in giving consent of the Government to be sued, which consent, since it is a relinquishment of a sovereign immunity, must be strictly interpreted. Section 2 authorizing suits against the Government in district courts, is an integral part of the statute, other sections of which revised and enlarged the classes of claims against the United States which could be litigated in the Court of Claims. It was the jurisdiction thus defined and established for that court which was extended by the section to the district courts in the specified instances, for in consenting to suits against the Government in the district courts, Congress prescribed that the jurisdiction thus conferred should be "concurrent" with that of the Court of Claims.

Construing the statutory language with that conservatism which is appropriate in the case of a waiver of sovereign immunity and in the light of the history of the Court of Claims' jurisdiction to which we have referred, we think that the Tucker Act did no more than authorize the District Court to sit as a court of claims and that the authority thus given to adjudicate claims

against the United States does not extend to any suit which could not be maintained in the Court of Claims. The matter is not one of procedure but of jurisdiction whose limits are marked by the Government's consent to be sued. That consent may be conditioned, as we think it has been here, on the restriction of the issues to be adjudicated in the suit, to those between the claimant and the Government. The jurisdiction thus limited is unaffected by the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which prescribe the methods by which the jurisdiction of the federal courts is to be exercised but do not enlarge the jurisdiction.

The present litigation well illustrates the embarrassments which would attend the defense of suits brought against the Government if the jurisdiction of district courts were not deemed to be as restricted as is that of the Court of Claims. The Government, to protect its interests, must not only litigate the claim upon which it has consented to be sued, but must make certain that respondent's right, as against the judgment debtor, to maintain the suit is properly adjudicated. And since the alleged claim for damages is larger than the $10,000 jurisdictional amount the Government must either be subjected to successive suits for partial recoveries of the amount due or must make certain that respondent has legal authority to relinquish the judgment debtor's claim in excess of $10,000, and that this has been accomplished by the limitation of his demand for judgment to that amount. The Government's consent to litigate such issues is hardly to be inferred from its consent to be sued upon a claim for damages for breach of contract.

*Id.* at 587–91, 61 S.Ct. 767 (citations omitted).

Relying, as plaintiffs herein, on the *Sherwood* case, and making an argument analogous to plaintiffs' contention herein, defendants in *Rothgeb v. Statts,* 56 F.R.D. 559 (S.D.Ohio 1972), argued because the district court was sitting as a "little" Court of Claims, it was limited to using the provisions of the Federal Rules of Civil Procedure which had been adopted as a rule by the

Court of Claims. *Id.* at 562. Defendants contended because the Court of Claims, at that time, had "not adopted a rule equivalent to Rule 23 of the Federal Rules of Civil Procedure permitting the maintenance of class actions," the plaintiffs could not maintain a class action "under the Tucker Act in [a] federal district court." *Id.* In finding the argument without merit, the court explained:

> In the Sherwood case the Supreme Court did not hold that the district courts in Tucker Act cases are confined to the use of the procedural rules adopted by the Court of Claims. The Sherwood case only stands for the proposition that a federal district court in a Tucker Act case may not utilize the Federal Rules of Civil Procedure in a manner which would expand the district court's jurisdiction beyond that possessed by the Court of Claims. Thus, an essential distinction must be made between procedural matters and jurisdictional matters. The present case presents an entirely different situation from that involved in the Sherwood case. It is undisputed that each individual member of the class which plaintiffs seek to represent can maintain a Tucker Act action in the various district courts across the country to recover overtime pay from the government. Unlike Sherwood, in the present case there is no dispute as to whether the district court has jurisdiction under the Tucker Act. Plaintiffs' request for the maintenance of this action as a class action does not result in an expansion of this Court's jurisdiction beyond that possessed by the Court of Claims. On the contrary plaintiffs are attempting to utilize a procedural technique, unrelated to the question of jurisdiction, whereby a multiplicity of suits can be avoided and multiple claims against the government involving common questions of law and fact can be determined in one proceeding. Since the Tucker Act confers jurisdiction over the individual claims of each member of the class which plaintiffs seek to represent, the class action provisions of Rule 23, Federal Rules of Civil Procedure do not expand this Court's jurisdiction beyond that possessed by the Court of Claims and therefore the provisions of Rule 23 may be utilized in this Tucker Act case.

*Id.* at 563; *see Baumgold Bros., Inc. v. Allan M. Fox Co.-East,* 336 F.Supp. 175, 177 (N.D.Ohio 1972) (commenting "[i]n spite of its 'court of claims jurisdiction,' the district court retains its own unique trappings and is obliged to follow its own procedure (The Federal Rules of Civil Procedure) rather than the practice and procedure of the Court of Claims, save and except the jury trial provision of the Seventh Amendment, which is not applicable to the Court of Claims or the District Court sitting as a 'court of claims' "). The court went on to note that recently, the Court of Claims in *Quinault Allottee Assoc. v. United States,* 197 Ct.Cl. 134, 453 F.2d 1272 (1972), stated it had the power to "entertain class actions and adopted in that case a class action procedure comparable to the class action device utilized in the district courts under rule 23, Federal Rules of Civil Procedure." *Id.* However, the *Rothgeb* court went on to certify the class pursuant to rule 23 of the Federal Rules of Civil Procedure and not upon the *Quinault* factors[5] used by the Court of Claims. *Id.* at 564–65.

The Court of Claims set forth the *Quinault* criteria or factors in a decision in which the power of the Court of Claims to even entertain a class action was challenged by the Government. *Quinault Allottee Assoc. v. United States,* 197 Ct.Cl. 134, 453 F.2d 1272, 1274 (1972). Instructive to the issue at hand, is the Court of Claims discussion on

---

**5.** The *Quinault* criteria are as follows:

(1) members must constitute a large but manageable class; (2) there is a question of law common to the whole class; (3) a common legal issue overrides separate factual issues affecting individual members; (4) claims of the party plaintiffs are typical of claims of the claws; (5) the government must have acted on grounds generally applicable to the whole class; (6) the claims of many claimants must be so small that it is doubtful they would be otherwise pursued; (7) the party plaintiffs must adequately and fairly protect the interest of the class without conflicts of interest; and (8) the prosecution of individual lawsuits must create a risk of inconsistent or varying adjudications.

*Taylor v. United States,* 41 Fed.Cl. 440, 445 (Fed. Cl.1998).

the applicability of the rules of procedure in that case:

> Under 28 U.S.C. § 2071 we can prescribe rules for the conduct of our business, just as 28 U.S.C. § 2072 authorizes the promulgation of rules of civil procedure for the district courts. Obviously, Rule 23, F.R.C.P., was within the Supreme Court's mandate to adopt rules of "practice and procedure" for the district courts; the class suit is basically a procedural technique for resolving the claims of many individuals at one time, comparable to joinder of multiple parties and intervention. There is nothing in the type of jurisdiction we have, or the fact that claims in this court are normally against the United States, to deprive us of this modern aid to speedier and less repetitious litigation. Congress has limited us to monetary judgments but it has not said or implied that we cannot use new procedural techniques, if we consider them advisable, in deciding whether or not to make monetary awards in fair and efficient fashion. The directive that waiver of sovereign immunity not be read expansively goes to the relief we can award, the subjects we can consider, and the timing of claims, not the intermediate procedural steps we take in cases plainly within our jurisdiction. Long ago, the Supreme Court said that in hearing and determining the causes that come before this court for adjudication "we see no reason why it [the Court of Claims] may not use such machinery as courts of more general jurisdiction are accustomed to employ under similar circumstances to aid in their investigations."

Rule 23 F.R.C.P. is applicable to all civil litigation in the district courts even though they have Tucker Act jurisdiction up to $10,000 and unlimited Tort Claims Act jurisdiction. The only decision on the point holds that those courts can entertain class actions pursuant to Rule 23 against the United States under both of those statutes. Since the district courts' Tucker Act jurisdiction is "concurrent with the Court of Claims" and the Tort Claims Act is comparable to the Tucker Act in all respects pertinent to this case (both involve claims against the United States for money

only), we can see no distinction between the power of the district courts and of this court to accept class suits against the United States. Indeed, if there were, an unfair inconsistency would be created between claimants asking more than $10,000 and those demanding less.

Though we have not adopted a rule akin to Rule 23 nor have we gone as far as that provision permits in binding absent members of a class, this court has acknowledged both that groups of claimants can join together in "class" suits, and that special procedures may be applicable to that category of litigation....

Of course, the existence of power in this court to adopt a rule equivalent to Rule 23, F.R.C.P., or without such a rule to borrow those district court provisions in a particular case of our own, does not mean that we must or should do so. We often follow the practice and procedure of the district courts, but there is no compulsion; we have departed from the Federal Rules in other aspects, such as discovery. The fact is that, even though present rule 23 has been in effect since 1966, we have not adopted an analogue or parallel. The practice in class suits (including the prescription of standards for giving actions that characterization) is still flexible and open in this forum.

We have now decided that, for the time being, we will not adopt or promulgate any general rule on the subject, though we shall continue to consider that possibility for the future. Rule 23, particularly the part which contemplates binding absent members of the class, has evoked controversy, and "the Jury is not yet in." The former Rule 23, replaced in 1966, is no longer considered an acceptable mode. Above all, the "class suit" is a rainbow concept, merging many shades and forms of multiple claim litigation into one summary phrase. Some of these forms may fit our cases, others not. It may possibly be that not all of the current Rule 23 mechanisms may be needed or apt for this court or will work efficiently here. Time, experience, and perhaps experiment should precede the jelling of an over-all formula.

We could, of course, refuse to take any steps at all until a general rule is prescribed, but we think the better road to follow, until we are clearer as to the shape of the class-suit needs in this court and the functioning of various class-suit devices, is to proceed on a case-by-case basis, gaining and evaluating experience as we study and decide the class-suit issues presented by individual, concrete cases coming up for resolution. If we ultimately adopt a general rule, it will be in the light of this *ad hoc* experience.

\* \* \* \* \*

We are not satisfied, however, that it is necessary or appropriate to bind allottees who fail to join the suit, or that we should adopt the device of Rule 23(c)(2), (3) for notice to class members that, unless they request exclusion from the suit by a specified date, the judgment, whether favorable or not, will cover them.

*Id.* at 1274–76 (citations omitted); *see Crone v. United States,* 210 Ct.Cl. 499, 538 F.2d 875, 884 (1976) (reiterating rule 23 of the Federal Rules of Civil Procedure not binding; stating no rule 23 equivalent had been adopted and class actions continued to be handled on a case-by case basis). Thereafter, the Court of Claims, later becoming the United States Claims Court and then the United States Court of Federal Claims in 1992, continued to review class actions on a case by case basis and continued to recognize the differences between class actions in its own court versus those in the district courts.

For example, in *Cooke v. United States,* 1 Cl.Ct. 695, 697 (Cl.Ct.1983), the United States Claims Court recognized three practical differences between its own class action rule and that of the district courts as follows:

(1) under our rule, class members are not bound by adjudication of the class action unless they specifically opt into the case; (2) there is generally little or no possibility of inconsistent adjudications of the same issue since the jurisdiction of this court is usually exclusive; and (3) because the defendant in our cases is always the same— the United States—it may be bound by adverse determinations even vis-a-vis indi-

viduals who are not parties to the litigation.

*Id.* at 697–98 (footnotes omitted). Although district courts were to apply their own rules of procedure regarding class actions, the Claims Court noted any inconsistency between it and the district courts would be resolved by the Federal Courts Improvement Act of 1982 which directed all appeals of Tucker Act cases to the Court of Appeals for the Federal Circuit. *Id.* at n. 4. In *Taylor v. United States,* 41 Fed.Cl. 440, 443–44 (Fed. Cl.1998), the United States Court of Federal Claims explained different rules are utilized in class action certification decisions made by the Court of Federal Claims and the federal district courts. In the Court of Federal Claims, the rules provide:

A motion to certify a class action shall be filed with the complaint and comply with Rule 3(c), with service to be made as provided in Rule 4. The court shall determine in each case whether a class action may be maintained and under what terms and conditions.

RCFC 23. Unlike Rule 23 of the Federal Rules of Civil Procedure, RCFC 23 is discretionary, granting the court freedom to determine under what circumstances to certify a class and the terms and conditions of the class once it is certified.

*Id.* The *Taylor* court recognized "[a]lthough the federal district courts and the Federal Court of Claims apply different rules when certifying a class, the *Quinault* criteria are influenced by the Federal Rules of Civil Procedure." *Id.* The *Taylor* court noted the Court of Claims considers the interests of justice in addition to the *Quinault* criteria. *Id.* In *Berkley v. United States,* 45 Fed.Cl. 224 (Fed.Cl.1999), the Court of Federal Claims explained the eight elements or criteria set forth in *Quinault* closely follow rule 23 of the Federal Rules of Civil Procedure with one exception:

(1) *Quinault* states that the members of the class must constitute a large, but manageable class; Federal rule of Civil Procedure 23(a)(1) allows certification if the class is so numerous that joinder of all members is impracticable, and Federal Rule of Civil Procedure 23(b)(3)(D) takes

into account manageability in allowing class certification; (2) *Quinault* requires that there must be a question of law common to the whole class; Federal Rule of Civil Procedure 23(a)(2) requires questions of law or fact common to the class; (3) *Quinault* directs that there must be a common legal issue that overrides separate factual issues affecting individual members; Federal Rule of Civil Procedure 23(b)(3) has a consistent requirement that the question of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for fair and efficient adjudication; (4) *Quinault* offers that the claims of the party plaintiffs should be typical of the claims of the class; Federal Rule of Civil Procedure 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class; (5) *Quinault* directs that the government must have acted on grounds generally applicable to the whole class; another of the alternatives identified in Federal Rule of Civil Procedure 23(b) states that one of the possible elements of a maintainable class action is that the opposing party to the class has acted or refused to act on grounds generally applicable to the group (Rule 23(b)(2)); (6) *Quinault* offers that the court should review whether the claims of the many claimants are so small that it is doubtful they otherwise would be pursued; similarly, the underlying theme of Federal Rule of Civil Procedure 23, as discussed in the Advisory Committee Notes of 1966, suggests that "the amounts at stake for individuals may be so small that separate suits would be impracticable," *see* Federal Rule of Civil Procedure Advisory Committee Notes discussing subsection (b)(3) of

Rule 23; (7) *Quinault* directs that the party plaintiffs must adequately and fairly protect the interests of the class without a conflict of interest; the same requirement is covered in Federal Rule of Civil Procedure 23(a)(4); (8) *Quinault* requires consideration of whether the prosecution of individual lawsuits could create a risk of inconsistent or varying adjudications; Federal Rule of Civil Procedure 23(b)(1)(A) addresses the same concern.

Thus, according to the *Quinault* court, the elements articulated in Federal Rule of Civil Procedure 23, created, in combination, "good lessons" for determining when to proceed as a class action, and the elements are parallel except in one respect. For class certification, Federal Rule of Civil Procedure 23 requires four prerequisites and one of three other factors, including some of the alternative grounds for certification. In comparison, the *Quinault* articulation suggests that all eight elements articulated by the court should be reviewed to determine whether class certification is appropriate.

*Id.* at 230–31 (case citations omitted).

With the revision of rule 23 of the Rules of the Court of Federal Claims on May 1, 2002,[6] a class action may be certified in the Court of Federal Claims if the following criteria are met:

(a) Prerequisites to a Class Action. One or more members of a class may sue as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representatives will fairly and adequately protect the interest of the class.

---

**6.** As the foregoing discussions reveals, the class action rule in the Court of Federal Claims underwent considerable change over the years. As explained in *First Hartford Corp. Pension Plan & Trust v. United States*, 42 Fed.Cl. 599, 609 n. 16 (Fed.Cl.1998), *aff'd in part, rev'd in part*, 194 F.3d 1279 (Fed.Cir.1999):

By 1982, the Claims Court had adopted a long-worded rule 23 Class Action that mirrored FRCP 23. But, by 1994, the Court of Federal

Claims had revised and reduced the class action rule to two sentences, which allowed for judges to apply class action principles only when needed on a case-by-case basis. The adoption and revision of the class action rule over the last twenty or more years since its initial use in *Quinault*, demonstrates the caution needed in expanding this Court's jurisdiction and trial procedures.
(Citation omitted).

(b) Class Action Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (1) the United States has acted or refused to act on grounds generally applicable to the class; and (2) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by members of the class; and (C) the difficulties likely to be encountered in a class action.

*Barnes v. United States,* 68 Fed.Cl. 492, 494 (Fed.Cl.2005). These requirements may be grouped into five categories-numerosity, commonality, typicality, adequacy, and superiority—and because the requirements are worded in the conjunctive, the "failure to satisfy any one of them is fatal to class certification." *Id.* Despite being patterned on rule 23 of the Federal Rules of Civil Procedure and considered to be "similar in both language and effect," differences do exist. *Fisher v. United States,* 69 Fed.Cl. 193, 196 (Fed.Cl.2006). As the Court of Federal Claims explained:

Unlike FRCP 23, RCFC 23 permits only opt-in classes, not opt-out classes. Opt-out classes were viewed as inappropriate in this Court because of the need for specificity in money judgments against the United States, and the fact that the court's injunctive powers—the typical focus of an opt-out class—are more limited of a district court.

*Id.* The *Quinault* criteria are now used to "amplify and clarify the requirements of RCFC 23." *Id.* at 197. With the revision of the rule, the notion class actions in the Court of Federal Claims and/or its predecessors were "disfavored" was found to be "contrary to the objective of bringing the court's procedures, at least with respect to certification of opt-in classes, more closely in line with the procedures used by district courts." *Id.*

■ As the last sentence reflects, the objective of the revision of RCFC 23 was to bring the rule "more closely in line with the procedures used by the district courts" and not to replace those employed by this and other district courts. In fact, in a Little Tucker Act case decided in a district court following the revision of rule 23 in the Court of Federal Claims, the court applied rule 23 of the Federal Rules of Civil Procedure to the class sought to be certified. *LeBeau v. United States,* 222 F.R.D. 613, 616 (D.S.D. 2004). Moreover, when Congress wants a district court to allow opt-in classes or to follow a procedure different from its standard practice, it is specific in its language directing such a procedure or deviation. *See United States v. Hohri,* 482 U.S. 64, 72–73, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987) (recognizing a conspicuous feature of the judicial arrangements concerning appeals is the creation of exclusive Federal Circuit jurisdiction over *every appeal* from a Tucker Act or nontax Little Tucker Act claim; "Given this comprehensive framework and the strong expressions of the need for uniformity in the area, one would expect any exception intended by Congress to have been made explicit, rather than left to inferences drawn from loose language"); *Kern v. Siemens Corp.,* 393 F.3d 120, 128 (2nd Cir.2004) ("language of the FLSA suggests that, should Congress seek to authorize certification of 'opt in' classes, it can do so with unambiguous language. All parties concede that Rule 23 contains no such language"), *cert. denied,* 544 U.S. 1034, 125 S.Ct. 2272, 161 L.Ed.2d 1061 (2005); *De Asencio v. Tyson Foods, Inc.,* 342 F.3d 301, 311 & n. 16 (3rd Cir.2003) ("mandating an opt-in class or an opt-out class is a crucial policy decision. Congress has selected an opt-in class for FLSA actions" and similarly has done the same for class actions filed under the Age Discrimination in Employment Act; "in the absence of contrary congressional mandates, class actions in federal court are governed by Fed.R.Civ.P. 23"); *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1106 (11th Cir.1996) ("[i]n creating a collective action procedure for ADEA actions, Congress clearly adopted the opt-in joinder procedures

of section 216(b) of the FLSA and thus impliedly rejected the rule 23 class action procedures applicable to Title VII actions"); *LaChapelle v. Owens–Illinois, Inc.,* 513 F.2d 286, 289 & n. 10 (5th Cir.1975) ("Rule 23(c) provides for 'opt-out' class actions. FLSA § 16(b) allows as class members only those who 'opt in.' These two types of class actions are mutually exclusive and irreconcilable. Since ADEA § 7(b) adopts FLSA § 16(b), we must hold that only 'opt-in' type class actions may be utilized in age discrimination cases. Rule 23 cannot be invoked to circumvent the consent requirement of the third sentence of FSLA § 16(b) which has unambiguously been incorporated into ADEA by its Section 7(b)"; section 7(b) of the ADEA adopts all of section 16 of FSLA—"[h]ad Congress desired to read out the third sentence it could have done so. It has not, and we may not. Any argument that the inclusion of the consent requirement undercuts the broad remedial purposes of ADEA should be made to the legislature and not to the courts"); *Andrews v. Webb,* 685 F.Supp. 579, 586 n. 15 (E.D.Va.1988) ("Prior to October, 1982, Little Tucker Act cases were reviewable by the various regional Circuit Courts of Appeal. As of that date, Congress conferred on the Court of Appeals for the Federal Circuit exclusive appellate jurisdiction over such case, thereby giving effect to congressional desire for uniformity in this area of the law"). Therefore, this Court finds it may not adopt a new opt-in procedure based on analogy as the plaintiffs' contend, but must wait for Congressional authority.

However, as the court in *Kern v. Siemens Corp.,* 393 F.3d 120, 124 (2nd Cir.2004), *cert. denied,* 544 U.S. 1034, 125 S.Ct. 2272, 161 L.Ed.2d 1061 (2005), explained, Congress has *"prohibited* 'opt in' provisions by implication." In finding the certification by the district court of an opt in class in error, the court rejected the analogy to the FLSA as well as the district's court's reasoning such a class was necessary under the circumstances and permitted by its equitable powers. *Id.* at 126–27. As background for its holding, the court explained:

Not only is an "opt in" provision not required, but substantial legal authority supports the view that by adding the "opt out" requirement to Rule 23 in the 1966 amendments, Congress *prohibited* "opt in" provisions by implication. Professor Benjamin Kaplan of Harvard Law School, who served as Reporter of the Advisory Committee on Civil Rules from 1960 to 1966, and later as a Justice of the Supreme Judicial Court of Massachusetts, explained that the Committee rejected the suggestion "that the judgment in a (b)(3) class action, instead of covering by its terms all class members who do not opt out, should embrace only those individuals who in response to notice affirmatively signify their desire to be included. . . ." He elaborated the rationale of the Committee's decision:

"[R]equiring the individuals affirmatively to request inclusion in the lawsuit would result in freezing out the claims of people—especially small claims held by small people—who for one reason or another, ignorance, timidity, unfamiliarity with business or legal matters, will simply not take the affirmative step. The moral justification for treating such people as null quantities is questionable. For them the class action serves something like the function of an administrative proceeding where scattered individual interests are represented by the Government. In the circumstances delineated in subdivision (b)(3), it seems fair for the silent to be considered as part of the class. Otherwise the (b)(3) type would become a class action which was not that at all—a prime point of discontent with [the pre–1966 version of Rule 23]."

*Id.* (citations omitted, emphasis in original). Courts and other eminent rules authorities have accepted Professor Kaplan's view in finding *opt in classes contrary to rule 23. Id.* at 124–25 & n. 6.

In addition to the reasons advanced in the district court for allowing an opt in class, plaintiffs suggested three additional reasons on appeal. *Id.* at 127.

"First, non-American Class members must accept the risk that, if they are required to litigate damages in their own countries

[and if these foreign courts decline to recognize the liability judgment of American courts], an American judgment may only be *evidence* of a Defendant's liability." This argument has essentially the same flaw as the District Court's argument—the purported necessity of the "opt in" provision is a function not of the circumstances of this case, but of the particular litigation strategy that plaintiffs chose to pursue. "Second, the opt-in procedure avoided any question as to whether Class members received adequate notice—another issue likely to arise in international class actions"; and "[t]hird, the opt-in procedure assured that absent Class members desired to be represented by Class Counsel—a concern that often arises in the context of serious personal injury claims." Whatever the merits of these two arguments, they would expand the use of "opt in" provisions far wider than the present Rule 23 jurisprudence conceivably contemplates. After all, adequate notice and satisfactory class representation are salient issues in most class actions.

In short, we cannot envisage any circumstances when Rule 23 would authorize an "opt in class" in the liability stage of a litigation. But even if circumstances necessitating the certification of such a class could be shown, neither the district Court nor plaintiff have done so in the case before.

Nor does the District Court's analogy to the FLSA provide support for this novel reconstruction of Rule 23. The Court is correct that, unlike Rule 23, the FLSA provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." The District Court, however, was asked to certify a class under Rule 23, not under the FLSA. If anything, the language of the FLSA suggests that, should Congress seek to authorize certification of "opt in" classes, it can do so with unambiguous language. All parties concede that Rule 23 contains no such language.

Lastly, the District Court erroneously invoked its "equitable powers." That Rule 23 does not authorize "opt in" classes is "immaterial," the Court held, because courts have "equitable powers" to certify such classes. Contrary to the District Court's assertion, Rule 23 offers the *exclusive* route to forming a class action. Any putative "opt in" class, assuming such classes are permitted at all, must still satisfy the requirements. Plaintiffs have not demonstrated that the facts of this case permit the certification of an "opt in" class that comports with Rule 23.

*Id.* at 127–29 (citations omitted, emphasis in original). Likewise, in this case, the litigation strategy chosen by the plaintiffs was to file their case in the federal district court which is bound by rule 23 of the Federal Rules of Civil Procedure. As the Court explained in its Order Concerning Jurisdiction and Motion for Class Action Certification and Motions to Transfer Case to Court of Federal Claims filed in this case on August 28, 2001, "even if this Court has jurisdiction over all of the prospective plaintiffs ... the Court further finds that it would not be able to certify the class pursuant to rule 23." *Docket # 69* at page 28. Plaintiffs have not offered any additional argument or authorities to change this decision.

### WOULD THE APPLICATION OF THE OPT–IN MECHANISM SERVE JUSTICE, PROVIDE CONSISTENCY AND BE SOUND PUBLIC POLICY?

Plaintiffs point out the comments to the revised RCFC 23 note two valid policy reasons for narrowing the scope of class certification in actions against the Government: a practical judicial limitation and consideration for the government. Plaintiffs assert additional policy reasons include this Court's application of the RCFC would provide a consistent rule for the Government and the litigants in all Article I claims as well as consistency on appeal. In additional to consistency, plaintiffs contend the opt-in rule would assure this Court of a knowing waiver by class members of their rights to recover more than $10,000.

■ As plaintiffs correctly set forth, the Rules Committee Notes for the 2002 Revi-

sion notes the policy reasons for the rule as follows:

> Because the relief available in this court is generally confined to individual money claims against the United States, the situations justifying the use of a class action are correspondingly narrower than those addressed in FRCP 23. Thus, the court's rule does not accommodate, *inter alia,* the factual situations redressable through declaratory and injunctive relief contemplated under FRCP 23(b)(1) and (b)(2).

> Additionally, unlike the FRCP, the court's rule contemplates only opt-in class certifications, not opt-out classes. The latter were reviewed as inappropriate here because of the need for specificity in money judgment against the United States, and the fact that the court's injunctive powers—the typical focus of an opt-out class—are more limited than those of a district court.

While these policy reasons seem sound for application in this case, Congress has not, as defendant points out, given the Court of Federal Claims the authority to promulgate rules in the district courts, and therefore this Court is bound to follow rule 23 of the Federal Rules of Civil Procedure. As the Supreme Court explained in *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997):

> [C]ourts must be mindful that the Rule [23] as now composed **sets the requirements they are bound to enforce.** Federal Rules take effect after an extensive deliberative process involving many reviewers: a Rules Advisory Committee, public commenters, the Judicial Conference, this Court, the Congress. See 28 U.S.C. §§ 2073, 2074. **The text of a rule thus proposed and reviewed limits judicial inventiveness.** Courts are not free to amend a rule outside the process Congress ordered, a process properly tuned to the instruction that rules of procedure "shall not abridge ... any substantive right." § 2072(b).

(Emphasis added). The Court finds, therefore, it is bound by rule 23 of the Federal Rules of Civil Procedure until such time as the Supreme Court or Congress "eat the first shrimp" and make the RCFC rules applicable to a district court when deciding Little Tucker Act claims. As discussed herein, Congress has changed the methods and procedures employed by district courts when handling certain types of cases, such as FLSA and ADEA cases, and has changed where appellate jurisdiction lies in Little Tucker Act cases. No such affirmative action has occurred with respect to the applicability of opt in classes in federal district courts, nor may this Court change or invent rules to fit a particular situation or cause. This Court holds it lacks the power and authority to substitute the RCFC for the FRCP.

Accordingly, IT IS HEREBY ORDERED Plaintiffs' Motion for Opt In Class Action Certification (docket # 89) is DENIED.

It is so ORDERED.